George A. SARRO III,

v.

**CORNELL CORRECTIONS, INC., Wyatt Detention Center, Victor Liburdi, Captain Lorenzo, J. Carroll, J. Maguire and Jennifer Egan.**

**C.A. No. 00–011–T.**

United States District Court,
D. Rhode Island.

Feb. 27, 2003.

William M. Dolan III, Esq., Angel Taveras, Esq., Brown, Rudnick, Berlack & Israels, LLP, Providence, RI, Michele Elisa O'Brien, Esq., Brown, Rudnick, Freed & Gesmer, Boston, MA, for Plaintiff.

George A. Sarro III, Pro se.

Dennis T. Grieco II, Esq., Gidley, Sarli & Marlusak, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER

TORRES, Chief Judge.

## TABLE OF CONTENTS

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .53

**54**

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Bivens Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
 I. *Bivens and § 1983* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

 II. *Liability of Private Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

 III. *The "Federal Actor" Requirement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

 IV. The Other Bivens Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
 A. Congressional Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
 B. Other Factors Counseling Hesitation . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
 C. The Effect of Malesko . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

Section 1983 Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

### Introduction

George A. Sarro III, acting *pro se,* brought this action pursuant to 42 U.S.C. § 1983 and/or *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against various parties associated with the Donald Wyatt Detention Center, a privately-operated facility in which federal prisoners awaiting trial are incarcerated. Sarro seeks money damages for claimed violations of his Fifth and Eighth Amendment rights when prison guards allegedly failed to protect him from attack by fellow inmates and failed to provide him with adequate medical treatment for his injuries.

The case is before the Court for consideration of Sarro's objection to a magistrate judge's Report and Recommendation issued pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge has recommended that summary judgment be granted in favor of the defendants on the ground that they are neither state actors for the purposes of § 1983 nor federal actors for the purposes of *Bivens;* and, therefore subject matter jurisdiction is lacking.

Because I find that none of the defendants acted under color of state law; the individual defendants acted under color of federal law; and the corporate defendants cannot be held liable under *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001), the Recommendation is rejected with respect to the *Bivens* claim against the individual defendants and the Recommendation is accepted in all other respects.

### Background

In 1991, Rhode Island enacted the Municipal Detention Facility Corporations Act, R.I. Gen. Laws § 45–54–1, *et seq.,* which authorized municipalities to create public corporations that would own and operate detention facilities. *See Lawson v. Liburdi,* 114 F.Supp.2d 31, 33 (D.R.I.2000). The dual purposes of the act were to promote economic development and to provide a facility in which the United States Marshals Service could house federal pretrial detainees. *See* R.I. Gen. Laws § 45–52–2(b); *Lawson,* 114 F.Supp.2d at 33.

Pursuant to that statutory authorization, the City of Central Falls (the City) created the Central Falls Detention Facility Corporation (CFDFC) to build and own such a facility. CFDFC's Board of Directors consists of five unpaid members who are appointed by the mayor. The corporation is

not a part of the City. Rather it is "an instrumentality and agency of the municipality, but has a distinct legal existence from the municipality". R.I. Gen. Laws § 45–54–1. Financing to construct the facility, later named the Donald F. Wyatt Detention Center (Wyatt), came from bonds issued by the Rhode Island Port Authority. *See City of Central Falls v. Central Falls Det. Facility Corp.*, C.A. No. 94–3939, 1997 WL 839936, at *1 (R.I.Super. June 23, 1997).

The CFDFC contracted with the U.S. Marshals Service to house federal pretrial detainees at Wyatt. The CFDFC also contracted with Cornell Corrections, Inc.[1] (Cornell), a private corporation, to operate the facility and employ the staff. *See Huguenin v. Ponte*, 29 F.Supp.2d 57, 60 (D.R.I.1998). Under the terms of that contract, Cornell has the exclusive use of the facility and the exclusive authority to operate it.

In 1997, Sarro was awaiting trial on federal criminal charges and was being detained at Wyatt. Sarro alleges that, after a fight between another white inmate and a black inmate, Sarro reported to defendant Lorenzo that he had received numerous threats from black inmates and he requested to be placed in protective custody. Sarro further alleges that his request was denied and that, subsequently, defendant Carroll, another guard, left him unattended during a fire drill at which time he was viciously beaten by several black inmates. Finally, Sarro alleges that defendant Egan, the programs director at Wyatt, refused to provide him proper medical treatment for his injuries.

### Procedural History

On January 7, 2000, Sarro, acting *pro se,* filed a complaint against Wyatt, Cornell, and various employees working at Wyatt, including Lorenzo, Carroll, and Egan. Sarro seeks compensatory and punitive damages pursuant to *Bivens* and § 1983 for what he alleges were violations of his Eighth and Fifth Amendment rights resulting from the individual defendants' "deliberate indifference" to his "health and safety."

On June 21, 2000, Cornell moved to dismiss pursuant to Rules 12(b)(2), (4), (5) and Rule 4(m) of the Federal Rules of Civil Procedure, for alleged deficiencies in process and the service of process, and, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. That motion was referred to a magistrate judge for a Report and Recommendation pursuant to 18 U.S.C. § 636(b)(1)(B).

The magistrate judge *sua sponte* raised the issue of subject matter jurisdiction and ordered the individual defendants to file affidavits stating whether they were employed by any governmental entity, state or federal. The defendants submitted an affidavit, stating that, at all relevant times, the individual defendants were employed by Cornell Corrections of Rhode Island, Inc. Sarro submitted a letter, stating his belief that because he was a federal prisoner in the custody of the U.S. Marshal, the individual defendants were employed by the federal government.

The magistrate judge recommended that the claims against Wyatt be dismissed on the ground that there was no such legal entity. He also recommended that the motion to dismiss with respect to the remaining defendants be denied to the extent that it was based on alleged insufficiencies in process and the service of process. There has been no objection to ei-

---

1. Cornell Corrections, Inc., later changed its name to Cornell Companies, Inc., and created Cornell Corrections of Rhode Island.

ther of those recommendations. The magistrate judge treated the motion to dismiss pursuant to Rule 12(b)(6) as a motion for summary judgment and recommended that it be granted on the ground that subject matter jurisdiction was lacking because the defendants had not acted under color of federal law within the meaning of *Bivens* or state law within the meaning of § 1983.

Sarro objected and, because of the importance and complexity of the issues presented and because no court has yet decided whether a guard at a privately-operated facility housing federal prisoners is amenable to suit under *Bivens*, this Court appointed counsel to represent Sarro. This Court also granted the American Civil Liberties Union leave to file an *amicus* brief.

While the objection was pending, Sarro's counsel filed an amended complaint adding CFDFC as a defendant and asserting claims for negligence. While that complaint is not, now, the subject of the Court's consideration, it will be affected by the rulings made with respect to the magistrate judge's Report & Recommendation.

### Standard of Review

Recommendations by a magistrate judge are reviewed *de novo*. 28 U.S.C. § 636(b)(1)(C). Since the recommendation, here, is that summary judgment be entered, the applicable standard of review is found in Rule 56(c) of the Federal Rules of Civil Procedure.

Rule 56(c) provides for the entry of summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under governing law." *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 31 (1st Cir.1995). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* In determining whether summary judgment is appropriate, the court views the evidence and all inferences that may fairly be drawn from it in the light most favorable to the nonmoving party. *Id.* at 29.

### Bivens Liability

Although the Supreme Court has held that a private corporation operating a prison is not subject to suit under Bivens, *Malesko*, 534 U.S. at 73, 122 S.Ct. 515 no Court has yet addressed whether a federal prisoner incarcerated at a privately-operated facility may maintain a *Bivens* action against guards and other individuals employed at that facility; and, at first blush, the decisions of the Supreme Court that bear on that issue appear to be irreconcilable.

The Supreme Court has held that a federal officer acting under color of federal law may be liable for damages for violating the constitutional rights of another. *Bivens*, 403 U.S. at 397, 91 S.Ct. 1999. On the other hand, the Court has expressed reluctance to apply *Bivens* in cases where alternative remedies are available. *Malesko*, 534 U.S. at 73, 122 S.Ct. 515.

In the prison context, *Malesko* held that a prisoner at a privately-operated prison cannot bring a *Bivens* action against the entity that runs the facility because, among other things, that would give the prisoner greater rights than those enjoyed by prisoners at publicly-operated prison facilities. *Id.* at 71–72, 122 S.Ct. 515. However, in *Richardson v. McKnight*, the Supreme Court held that the guards at a privately-operated prison are not entitled to qualified immunity under § 1983, a holding that seemingly results in more favorable treatment for prisoners in these facilities because, unlike prisoners in pub-

licly-operated facilities, their claims would not be subject to the defense of qualified immunity. 521 U.S. 399, 412, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997).

Nevertheless, upon closer examination, these "conflicts" turn out to be more apparent than real; and, in any event, the Supreme Court has made it plain that whether a prisoner at a privately-operated prison may maintain a *Bivens* action against individuals employed at the prison is an open question. *Malesko*, 534 U.S. at 65, 122 S.Ct. 515 (parties agree that the question whether a *Bivens* action might lie against a private individual is not presented here). If anything, the dissent in *Malesko* suggests that such an action may be maintained. *Id.* at 79 n. 6, 122 S.Ct. 515 (Stevens, J., dissenting) (both parties and the United States as *amicus* acknowledge that the individual guards would appropriately be liable under *Bivens* ); *see Richardson*, 521 U.S. at 413, 117 S.Ct. 2100 ("we have focused only on questions of § 1983 immunity and have not addressed whether the defendants are liable under § 1983 even though they are employed by a private firm.").

### I. *Bivens and § 1983*

*Bivens* held that a "federal agent acting under color of his authority" may be liable for money damages when he engages in conduct that violates an individual's Fourth Amendment rights even though there is no federal statute expressly authorizing an award of damages. 403 U.S. at 392, 396–97, 91 S.Ct. 1999. Since then, the Supreme Court has extended *Bivens* to cases involving Fifth Amendment and Eighth Amendment violations as well. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

Although *Bivens* applies only to those acting under color of *federal* law and § 1983 applies only to those acting under color of *state* law, the rationale underlying *Bivens* is similar to Congress' rationale in enacting § 1983. The objective in both instances is to make government actors who misuse their governmental authority liable for the consequences of their misdeeds and to provide adequate redress to individuals whose constitutional rights are violated by such conduct.

However, because there is no statute that expressly authorizes damage awards against federal actors, the Supreme Court has been reluctant to imply such a remedy except where necessary to deter and/or redress violations of fundamental constitutional rights. *See Bush v. Lucas*, 462 U.S. 367, 374–78, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Consequently, *Bivens* actions, generally, have been allowed only in cases where there is no indication of a contrary Congressional intent and there are no "special factors counseling hesitation" *Id.* at 378, 103 S.Ct. 2404.

A contrary federal intent may be inferred "when Congress provides an alternative remedy ... [or] by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself...." *Id.*

Among the special factors that may counsel hesitation are: conflict with federal fiscal policy; the existence of a comprehensive remedial scheme providing meaningful remedies created by Congress; and the unique structure and nature of the military. *Schweiker v. Chilicky*, 487 U.S. 412, 421–23, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *United States v. Stanley*, 483 U.S. 669, 683–84, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); *Chappell v. Wallace*, 462 U.S. 296, 304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Bush*, 462 U.S. at 380–81, 388, 103 S.Ct. 2404.

## II. *Liability of Private Parties*

The magistrate judge cited two reasons for recommending that summary judgment be entered in favor of the defendants with respect to the *Bivens* claims. First, he concluded that only federal *officers* are subject to suit under *Bivens*. Second, he concluded that, even if a *Bivens* action could be maintained against private parties, the defendants, in this case, "did not act under the 'color of federal law.'" *Sarro v. The Donald Wyatt Det. Center*, C.A. No. 00–11, 2001 WL 210265, at *6 (D.R.I. Jan. 30, 2001) (Magistrate Judge's Report & Recommendation). This Court disagrees with both of those conclusions.

In deciding that only federal *officers* are subject to suit under *Bivens*, the magistrate judge relied on a footnote in *Fletcher v. Rhode Island Hosp. Trust Nat'l Bank*, 496 F.2d 927, 932 n. 8 (1st Cir.1974) stating that, "[t]here is no cause of action against private parties acting under color of federal law or custom." That reliance on *Fletcher* is misplaced for several reasons.

First, the quoted statement was only *dictum*. *Fletcher* did not involve a *Bivens* claim. Rather, it dealt with a § 1983 claim against a bank that was alleged to have wrongfully deducted amounts from the plaintiff's checking accounts. The First Circuit rejected the plaintiff's contention that the bank acted "under color of *state* law" simply because it was regulated by the state. Thus, the statement about the liability of a private party acting under color of *federal* law was unrelated to the Court's holding and the Court did not articulate any basis or reason for that statement.

■ Second, since *Fletcher* was decided, the First Circuit appears to have implicitly recognized that a private party acting under color of federal law may be liable under *Bivens*. *See Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d 447 (1st Cir.1983). In *Gerena*, a lawyer sued for damages resulting from the termination of his employment by a private nonprofit corporation organized under the laws of the Commonwealth of Puerto Rico. The plaintiff asserted claims under § 1983 and the United States Constitution. The Court upheld the dismissal of the "federal action" but did so only after exhaustively analyzing whether the defendant corporation satisfied the requirements of any of the applicable tests for determining when a private party can be considered a government actor. Thus, *Gerena* apparently assumed that a private corporation can be a government actor; and, therefore, liable for damages for federal constitutional violations. *See Heinrich ex rel. Heinrich v. Sweet*, 62 F.Supp.2d 282, 306 (D.Mass.1999) (noting that in *Gerena* the First Circuit seemed to assume without deciding that a *Bivens* action could lie against a private party acting under color of federal law).

Indeed, that assumption would be consistent with the holdings of most courts that have considered the question. *Yeager v. General Motors Corp.*, 265 F.3d 389, 398–99 (6th Cir.2001) (holding that General Motors would be liable under *Bivens* if it acted under color of federal law, but finding voluntary contractual relationship insufficient to establish federal action); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698 (6th Cir. 1996) (holding that private attorneys acting in concert with federal marshals were federal actors for the purposes of a *Bivens* action); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337–38 (9th Cir. 1987) (holding that the private status of a party will not defeat a *Bivens* claim, provided that the defendant engaged in federal action); *Dobyns v. E–Systems*, 667 F.2d 1219, 1227–28 (5th Cir.1982) (holding that a private organization which played dominant role in United States' Sinai Field Mission acted under color of federal law);

*Yiamouyiannis v. Chemical Abstracts Serv.*, 521 F.2d 1392, 1393 (6th Cir.1975) (finding plaintiff stated a valid *Bivens* claim against private employer receiving federal funds); *Heinrich,* 62 F.Supp.2d at 307 (holding that *Bivens* extends to actions against private parties who act under color of federal law); *Alexander v. Pennsylvania Dept. of Banking,* C.A. No. 93–5510, 1994 WL 144305, at *3 (E.D.Pa. Apr.21, 1994) (holding that private defendants acting in concert with government can be considered federal agents and thus liable under Bivens); *but see Kauffman v. Anglo–American School of Sofia,* 28 F.3d 1223, 1227 (D.C.Cir.1994) (holding no *Bivens* actions against private entities).

That assumption, also would be consistent with the Supreme Court's holding that, for purposes of § 1983, a private party exercising *state* authority may be deemed to act under color of *state* law. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 724–25, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

### III. *The "Federal Actor" Requirement*

 As already noted, *Bivens* applies to constitutional violations committed by private parties only if they act "under color of federal law"; or, put another way, only if the parties are "federal actors". The tests employed for determining whether a private party acts under color of federal law are similar to the tests employed for determining whether a private party acts under color of state law. *Nwanze v. Philip Morris, Inc.,* 100 F.Supp.2d 215, 220 (S.D.N.Y. 2000) (courts treat *Bivens* actions and § 1983 actions as analogous for most purposes), *aff'd,* 2001 WL 409450 (2d. Cir. Apr.23, 2001).

These tests include the "direct links" test, *Lebron v. Nat'l Railroad Passenger Corp.,* 513 U.S. 374, 397–400, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (a direct link between private corporation and federal government establishes that corporation acted under color of federal law); the public function test, *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (a private party performing a function traditionally the exclusive prerogative of the government is a government actor); the nexus test, *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (a private party is a state actor when there is a sufficiently close nexus between the government and the challenged action of the private party that the action of the private party is fairly treated as that of the government itself); and the symbiotic relationship test, *Burton,* 81 S.Ct. at 862 (a private party is a state actor when the government has so far insinuated itself into a position of interdependence with that party that the government must be recognized as a joint participant in the challenged activity).

The magistrate judge concluded that the defendants in this case are not federal actors under any of these tests. This Court disagrees with that conclusion for several reasons.

First, these tests do not purport to exhaust the field of circumstances under which a private individual may be considered a federal actor by establishing a finite number of rigidly circumscribed pigeon holes within which particular conduct of a particular individual must precisely fit. Rather, the tests merely identify the factors that courts have applied in different contexts. *See Lugar,* 457 U.S. at 939, 102 S.Ct. 2744. Because some of the factors are very similar, the tests may overlap. For example, it may not always be possible

to draw a bright-line distinction between a private party who has a sufficiently close nexus to government that his acts may be attributed to the government and a private party that has such a symbiotic relationship with the government in performing a governmental function that the private party may be viewed as a joint participant.

■ Here, the defendants could be classified as federal actors under several of these tests, but there is no need to go beyond the public function test. Under the public function test, a private party may be deemed a government actor if that party exercises "powers traditionally exclusively reserved to the government." *Jackson*, 419 U.S. at 352, 95 S.Ct. 449.

The magistrate judge concluded that, because correctional facilities never have been operated *exclusively* by the government, the defendants are not federal actors. However, there is some question as to whether exclusivity is required. The opinion in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), a case decided by the Supreme Court after *Jackson*, suggests that an activity may satisfy the public function test if it is performed under the aegis of governmental authority. Thus, *Edmonson* held that private litigants are state actors for purposes of § 1983 when they exercise peremptory challenges even though, as the dissent noted, jury selection never has been an *exclusively* governmental prerogative. *See Giron v. Corr. Corp. of America*, 14 F.Supp.2d 1245, 1248 (D.N.M.1998).

Even if the function must be one that traditionally has been exclusively performed by the government, the incarceration of individuals accused of committing crimes is such a function. In concluding that it was not, the magistrate judge relied on the Supreme Court's observation in *Richardson*, that "correctional functions have never been exclusively public." 521

U.S. at 405, 117 S.Ct. 2100. However, the fact that the function of detaining individuals charged with crimes, sometimes, has been delegated to and performed by private parties does not prevent the function, itself, from being an exclusively governmental function.

Indeed, *Richardson* itself recognized that the mere fact that, historically, some prisons have been privately operated has little bearing on whether the guards employed there are government actors.— *Richardson's* observation about private prisons was made in the course of explaining why the Court found that privately-employed prison guards were not entitled to the same qualified immunity enjoyed by guards employed at publicly-operated prisons. More specifically, it was offered as support for the determination that, historically, immunity for prison guards arose "out of their status as public employees at common law" and not out of any " 'firmly rooted' tradition of immunity applicable to privately employed prison guards." *Id.* at 404–05. *Richardson* went on to recognize that there is a distinction between deciding whether there is a historical basis for inferring that private prison guards are entitled to qualified immunity and deciding whether they are government actors who may be held liable under § 1983. Accordingly, *Richardson* expressly refrained from deciding the latter question, saying: "we have focused only on questions of Section 1983 *immunity* and have not addressed whether the defendants are *liable* under Section 1983 'even though they are employed by a private firm.' " *Id.* at 413, 117 S.Ct. 2100 (emphasis added). Thus *Richardson* left it "for the District Court to determine whether, under this Court's decision in *Lugar v. Edmondson Oil Co.* . . ., defendants acted 'under color of state law.' " *Id.; see United States v. Thomas*, 240 F.3d 445, 448–49 (5th Cir.2001) (holding that a guard at a privately-operated

detention center under contract with the INS was a "public official" for purposes of Federal Bribery Statute and distinguishing *Richardson* on grounds that "[t]he policy considerations supporting private corrections officers' *not* being entitled to qualified immunity are quite different from those concerning whether they are 'public officials' for purposes of the federal bribery statute.").

Clearly, the detention of individuals charged with committing crimes is an exclusively governmental function. Only the government has the authority to imprison a person and the exclusive governmental nature of that function is not altered by the fact that, occasionally, the government may contract to have criminal defendants incarcerated at privately-operated institutions.

█ Here, Sarro and the other individuals incarcerated at Wyatt had been arrested by federal law enforcement agents and charged with federal crimes. They were being detained under authority of the United States government pending disposition of the charges against them. By law, they were in the custody of the United States Marshal who exercised ultimate authority over them. 18 U.S.C. § 4086; 28 C.F.R. §§ 0.111(k), 551.101 (2001). The power to detain them was derived solely and exclusively from federal authority and the defendants, in effect, acted as the Marshal's alter ego. The fact that the Marshal temporarily delegated the task of detaining those prisoners to the defendants did not convert that detention into anything other than an exclusively governmental function. *See Giron*, 14 F.Supp.2d at 1249 ("The function of incarcerating people, whether done publically or privately, is the exclusive prerogative of the state. This is a truly unique function and has been traditionally and exclusively reserved to the state.").

Finding private prison guards to be federal actors within the meaning of *Bivens* also is consistent with the weight of authority holding them to be state actors within the meaning of § 1983. *Street v. Corr. Corp. of America*, 102 F.3d 810, 814 (6th Cir.1996) (private prison guards acted under color of state law for purposes of § 1983 suit); *Giron*, 14 F.Supp.2d at 1249 (private prison guard acted under color of state law for purposes of § 1983 suit); *see also Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir.1991) (private corporation operating prison acted under color of law for purposes of § 1983); *Herrera v. County of Santa Fe*, 213 F.Supp.2d 1288, 1290 (D.N.M.2002) (private operator of detention center is state actor for purposes of § 1983); *Gabriel v. Corr. Corp. of America*, 211 F.Supp.2d 132, 137–38 (D.D.C. 2002) (private corporation that operates prison can be held liable under § 1983); *McCullum v. City of Philadelphia*, C.A. No. 98–5858, 1999 WL 493696, at *3 (E.D.Pa. July 13, 1999) (private company that provided food service to prison is state actor for purposes of § 1983); *Blumel v. Mylander*, 919 F.Supp. 423, 426–27 (M.D.Fla.1996) (private corporation that operated prison is liable under § 1983).

## IV. *The Other Bivens Factors*

### A. *Congressional Intent*

In this case, there is no manifestation of any Congressional intent to preclude courts from awarding damages to prisoners at privately-operated prisons for violations of their constitutional rights to the same extent that damages might be awarded to prisoners in publicly-operated prisons. Congress has not provided any comprehensive scheme for redress or any meaningful alternative remedy. *See Bush*, 462 U.S. at 386, 103 S.Ct. 2404 (*Bivens* is not applicable when Congress creates a comprehensive scheme that provides

meaningful remedies). In fact, Congress has not provided any alternative remedy at all.

Furthermore, Sarro cannot even seek redress through the Bureau of Prisons' Administrative Remedy Program because the program applies only to those incarcerated in BOP facilities and half-way houses operated under contract with the BOP. It does not apply to individuals confined in other facilities, in general, or to Wyatt, in particular. 28 C.F.R. § 542.10 (2001) (the ARP "does not apply to inmates confined in other non-federal facilities"). In this respect, this case is readily distinguishable from *Malesko* which involved a federal prisoner confined at a half-way house operated under contract with the Bureau of Prisons.

### B. *Other Factors Counseling Hesitation*

Absent any manifestation of Congressional intent to the contrary, courts are free to award damages for constitutional violations, but must pay "particular heed, however, to any special factors counseling hesitation". *Bush*, 462 U.S. at 378, 103 S.Ct. 2404.

Here, there are no significant factors counseling hesitation. This case is unlike those cases in which the Supreme Court has declined to apply *Bivens*, because it would interfere with federal fiscal policy, civil service regulations, the special nature of the military or other governmental programs or policies. *See id.* at 379–80, 389, 91 S.Ct. 1999; *Chappell*, 462 U.S. at 304, 103 S.Ct. 2362. In this case, there is no discernable governmental program or policy that would be undermined by applying *Bivens*. On the contrary, recognizing Sarro's *Bivens* claim simply would afford him the same remedies that already are avail-

able to federal prisoners in federally operated facilities. *Malesko*, 534 U.S. at 71–72, 122 S.Ct. 515 ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity."). In addition, as already noted, it would be consistent with the fact that, under § 1983, a state prisoner in a private prison facility may seek damages for constitutional violations by individual guards or employees. *Street*, 102 F.3d at 814; *Herrera*, 213 F.Supp.2d at 1289; *Giron*, 14 F.Supp.2d at 1249.

### C. *The Effect of Malesko*

■ In *Malesko*, the Supreme Court declined to consider "extending" *Bivens* beyond its "core premise" and held that a federal prisoner confined to a half-way house operated by a private corporation pursuant to a contract with the government could not maintain a *Bivens* action against the corporation. 534 U.S. at 71–72, 74, 122 S.Ct. 515. Clearly, *Malesko* is dispositive of Sarro's *Bivens* claims against Cornell.[2] On the surface, *Malesko* also appears to suggest that Sarro cannot assert a *Bivens* claim against the individual defendants either. However, a closer reading of *Malesko* indicates otherwise. Insofar as the individual claims are concerned, *Malesko* is readily distinguishable from this case in at least three respects.

First, the "core premise" referred to in *Malesko* was *Bivens'* purpose "to deter *individual* federal officers from committing constitutional violations" *Id.* at 70, 122 S.Ct. 515 (emphasis added), a purpose that the Court found would be undermined by allowing victims to seek recompense from the corporate employer, instead. *Id.* at

---

**2.** *Malesko* would also be dispositive of Sarro's claim against Wyatt, if Wyatt were an entity that could be sued. However, because Wyatt is not a legal entity, the claims against it should be dismissed for that reason, as the magistrate judge recommended.

70–71, 122 S.Ct. 515. Here, recognizing Sarro's damages claim against the individual defendants actually serves that "core premise" and does not extend it.

Second, one of the reasons cited in *Malesko* for not applying *Bivens* was that *Malesko* was not a case in which the claimant lacked "effective remedies". *Id.* at 72, 122 S.Ct. 515. In that connection, the Court noted that redress was available under the BOP's Administrative Remedy Program; and that, under state tort law, "alternative remedies are at least as great, and in many respects greater, than anything that could be had under *Bivens*." *Id.* As previously stated, Sarro is ineligible to seek redress under the Administrative Remedy Program. Furthermore, while *Malesko* indicates that the existence of *state* law remedies maybe a factor to be considered, in applying *Bivens*, state law remedies cannot be construed as a manifestation of Congressional intent to preclude the application of *Bivens*. Indeed, making the federal remedies available to a federal prisoner at a privately-operated institution contingent upon whether there are adequate alternative state law remedies would require a case-by-case analysis of state law and would cause the availability of a *Bivens* remedy to vary according to the state in which the institution is located, a result that *Bivens*, itself sought to avoid. *Bivens*, 403 U.S. at 389, 91 S.Ct. 1999 (indicating that remedies for constitutional violations should not depend on the law of the state in which the violation occurred).

Finally, one of the factors underlying the decision in *Malesko* was the desire to maintain parity between the remedies afforded to prisoners at privately-operated facilities and those at government-operated facilities. Thus, in rejecting the plaintiff's *Bivens* claim against the private corporation operating the prison, the Court pointedly stated that "no federal prisoners enjoy respondent's contemplated remedy" because, while a prisoner at a federal prison can bring a *Bivens* action against an individual officer, he "may not bring a *Bivens* claim against the officer's employer, the United States or the BOP." *Malesko*, 534 U.S. at 71–72, 122 S.Ct. 515. Refusing to apply *Bivens* to a federal prisoner's claim for alleged constitutional violations simply because that prisoner is incarcerated at a privately-operated prison rather than a government-operated prison would deprive that prisoner of a remedy available to prisoners at government-operated facilities, thereby running counter to the desire for parity expressed in *Malesko*.

### Section 1983 Liability

Section 1983 permits an individual whose constitutional rights are violated to recover damages from the "person" responsible for the violation. 42 U.S.C. § 1983. Because there is no respondeat superior liability under § 1983, generally, claims may be asserted only against the individual committing the violation. However, a municipality or a private entity is a "person" within the meaning of the statute and may be held liable if the violation can be attributed to its own policy or custom. *Herrera*, 213 F.Supp.2d at 1290; *Gabriel*, 211 F.Supp.2d at 138.

 In any event, in order to prevail, a plaintiff must show that the violation was committed "under color of" state law. A defendant is deemed to have acted "under color of state law" when he "exercises power 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317–318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). As already noted, in the case of a private entity, that test is satisfied if "the private entity exercise[s] powers which are

traditionally exclusively reserved to the state." *Street*, 102 F.3d at 814.

This Court is aware of only two reported cases addressing whether guards at a privately-operated facility housing state prisoners act "under color of state law" and both cases held that they do. *Id.* ("defendants were 'acting under color of state law' in that they were performing the 'traditional state function' of operating a prison."); *Giron*, 14 F.Supp.2d at 1249 (corrections officer was "acting under color of state law" because "only the government is empowered to incarcerate a citizen and [the] corrections officer was a state-regulated private actor performing the basics of this function.").

In this case, Sarro is unable to show that any of the defendants were acting under color of state law for the simple reason that maintaining custody of *federal* prisoners is neither a power "possessed by virtue of *state* law" nor one that has been "traditionally exclusively reserved to the *state*." The authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government. Therefore, Sarro's § 1983 claims are not viable against any of the defendants.

### Conclusion

Whether or not, as Justice Scalia states in *Malesko*, "*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action", 534 U.S. at 524, 122 S.Ct. 983 (Scalia, J., concurring), it should be applied consistently and even handedly unless and until it is overruled. Therefore, for all of the foregoing reasons, the magistrate judge's recommendations are hereby accepted in part, albeit for reasons different from those that he expressed, and rejected in part as follows:

1. The motion of defendant Cornell Corrections to dismiss for insuffi-

ciency of process and service of process is denied pursuant to the magistrate judge's recommendation.

2. The magistrate judge's recommendation that summary judgment be granted in favor of the individual defendants with respect to the *Bivens* claim is rejected.

3. Summary judgment may be entered in favor of defendants Cornell Corrections and Wyatt Detention Facility with respect to the *Bivens* claim for reasons previously stated.

4. Summary judgment may enter in favor of all defendants with respect to the § 1983 claims.

Furthermore, the plaintiff is directed to show cause, on or before March 27, 2003, why any *Bivens* claims against the corporate defendants and any § 1983 claims contained in the *Amended* Complaint should not be dismissed for reasons stated in this Memorandum and Order.

IT IS SO ORDERED.