Wesley PURKEY, Plaintiff,

v.

**CCA DETENTION CENTER,
et al., Defendants.**

No. CIV.A. 03–3157–CM.

United States District Court,
D. Kansas.

June 10, 2004.

Wesley I. Purkey, Leavenworth, KS, pro se.

### *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

Plaintiff filed the instant action on April 4, 2003. On November 6, 2003, the court granted plaintiff's request to proceed in forma pauperis and appointed counsel for plaintiff. On December 23, 2003, defendants filed a Motion to Dismiss (Doc. 16). On May 5, 2004, plaintiff filed a Response, and Suggestions in Opposition, to Defendants' Motion to Dismiss (Doc. 30) and an Amended Complaint (Doc. 31). Because an amended complaint supersedes the original complaint, the court will rule on defendants' Motion to Dismiss in light of the allegations contained in plaintiff's Amended Complaint.

### I. Facts

Plaintiff, a prison inmate, filed this civil rights lawsuit against the following defendants: Corrections Corporation of America (CCA); Fred Lawrence, Warden at CCA; Andre Ford, Chief of Security at CCA; Jacqueline Banks, an assistant warden at CCA; and Marteto Willingham, Michael Sullivan, Kenneth Daugherty, and Lance Adkins, correctional officers at CCA.

Defendant CCA is a Maryland corporation doing business in Leavenworth, Kansas under contract with the United States Marshal Service to detain and house federal prisoners. Plaintiff was a federal prisoner in the custody while being detained at CCA. Plaintiff is seeking relief for violations of his federally protected rights by the alleged destruction of legal papers (Count I), alleged prohibiting of plaintiff from assisting other inmates with the filing of grievances (Count II), alleged unsafe procedures connected with plaintiff falling in the shower at CCA (Count III & IV), alleged retaliation for use of grievance process (Count V), and excessive force (Count VI). Plaintiff states that the jurisdictional basis for his Amended Complaint is *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), 28 U.S.C. § 1331, and the First, Fifth, and Eighth Amendments to the Constitution of the United States.

### II. Standards

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff, *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir. 1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is

entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

## III. Discussion

### A. *Bivens* Actions Against Individual Defendants

▮ In Counts I, II, III, V, and IV, plaintiff asserts claims against the individual defendants under *Bivens.* Plaintiff's Amended Complaint specifically pleads that the individual defendants derived and exercised their control over him solely because of his status as a federal pretrial detainee and that, accordingly, the individual defendants were acting under color of federal law. The individual defendants argue that they are not federal officials; rather, they were at the pertinent times private employees and not federal employees or agents. The individual defendants contend that, as such, *Bivens* fails to confer jurisdiction.

As already noted, plaintiff asserts jurisdiction under 28 U.S.C. §§ 1331 and *Bivens.* Section 1331 provides jurisdiction over a civil action "arising under the Constitution, laws or treaties of the United States." Thus, the jurisdictional question turns on whether federal law, i.e. *Bivens,* provides a cause of action.

In *Bivens,* the United States Supreme Court recognized an implied private remedy for damages for violation of the Fourth Amendment by "a federal agent acting under color of his authority." 403 U.S. at 389, 91 S.Ct. 1999. The Supreme Court later extended *Bivens* to provide a damages remedy for violation of the Fifth Amendment Due Process Clause, *see Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and violation of the Eighth Amendment's guarantee against cruel and unusual punishment, *see Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

In 2001, the Supreme Court handed down *Correctional Services Corporation v. Malesko,* 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). In *Malesko,* a federal offender. sued Correctional Services Corporation (CSC), a private corporation under contract with the federal Bureau of Prisons, to house federal prisoners and detainees. While Malesko was in CSC custody, its employees forced him to climb stairs to his fifth floor living quarters even though he had a known heart condition. Malesko suffered a heart attack, fell, and was injured. Malesko brought a *Bivens* action against CSC for actual and punitive damages. Although he later attempted to amend his complaint to name a CSC guard as a defendant, his amendment was time-barred. *Malesko,* 534 U.S. at 65, 122 S.Ct. 515. In its holding, the Supreme Court refused to extend *Bivens* liability to CSC, and found that imposing liability on private prison facilities is a question for Congress, not the courts, to decide. As to the individual employee, the Supreme Court noted that the district court had dismissed on statute of limitations grounds. Therefore, it did not address whether a *Bivens* action might lie against individual employees of a federal contractor.

Plaintiff in this case initially named CCA as a defendant pursuant to *Bivens,* yet *Malesko* clearly precludes plaintiff's claims against CCA under *Bivens.* Plaintiff accordingly removed CCA as a defendant in his *Bivens* claims. However, defendants assert that *Malesko* also establishes that plaintiff cannot pursue a *Bivens* claim against individual CCA employees.

Since the decision in *Malesko,* no circuit court of appeals has decided this issue. In fact, this court found only two cases direct-

ly ruling on the issue at hand. *Compare Peoples v. CCA Detention Ctr.*, No. Civ. A03–3129, 2004 WL 74317 (D.Kan. Jan.15, 2004) (refusing to recognize a *Bivens* claim against individual employees of a private corporation that housed pretrial detainees pursuant to a contract with the United States) *with Sarro v. Cornell Corr., Inc.*, 248 F.Supp.2d 52 (D.R.I.2003) (recognizing a *Bivens* claim against individual private employees of company that housed federal prisoners pursuant to contract with the United States).

In *Peoples*, the plaintiff claimed that his constitutional right to be free from cruel and unusual punishment was violated when CCA and its employees failed to protect him from an assault by other inmates. The court ultimately held that a private prison inmate is not permitted to bring an action under *Bivens* against employees of a private corporation operating a prison holding federal prisoners where the inmate has an alternative remedy. Although noting that the reasoning in *Sarro* had some appeal, the court declared that its reading of *Malesko* was that, if other remedies-including state law negligence actions-are available, the Supreme Court would not extend *Bivens* to private employees of government contractors. The court concluded that the plaintiff had in essence claimed that the individual employees were negligent and that, as such, plaintiff's remedy lay under state negligence law, not *Bivens*.

While this court has the highest respect and admiration for Judge Vratil, the court disagrees with the holding in *Peoples* because the court is persuaded that the reasoning advanced in *Sarro* is sound. In *Sarro*, the district court found that the plaintiff could maintain a *Bivens* action against employees of a privately operated prison. In so finding, the court stated that, while on the surface, *Malesko* appears to suggest that a *Bivens* claim against such defendants cannot lie, a closer reading indicates otherwise. *Sarro*, 248 F.Supp.2d at 62.

Foremost, citing language from *Malesko*, the *Sarro* court determined that the " 'core premise' referred to in *Malesko* was *Bivens* ' purpose 'to deter individual federal officers from committing constitutional violations.' " *Id.* (citing *Malesko*, 534 U.S. at 70, 122 S.Ct. 515). In determining whether a private employer can be sued under *Bivens*, the *Malesko* court posited that "[i]f a corporate defendant is available for suit, claimants will focus their collection efforts on it, *and not the individual directly responsible for the alleged injury.*" *Malesko*, 534 U.S. at 62, 122 S.Ct. 515 (emphasis added). The distinction is important, the Supreme Court went on to state, because "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," and then cited its opinion in *F.D.I.C. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), for the proposition that "threat of suit against an individual's employer was not the kind of deterrence contemplated by *Bivens*." *Malesko*, 534 U.S. at 70–71, 122 S.Ct. 515.

Based upon the foregoing language, this court believes that plaintiff's suit against the individual employees in this case precisely serves the purpose set forth in *Bivens*. In other words, allowing plaintiff to bring suit against employees of a private prison [1] for alleged constitutional violations

---

1. Without hesitation, this court adopts the *Sarro* court's holding that the incarceration of individuals accused of committing crimes is a function that traditionally has been exclusively performed by the government. *Sarro*, 248 F.Supp.2d at 60. In this case, plaintiff was being detained under authority of the United States government pending disposition of federal charges against him and was in the custody of the United States Marshal, who exer-

does not extend *Bivens;* rather, such a cause of action is indeed the type contemplated in *Bivens.*

The *Sarro* court also discussed the language in *Malesko* regarding alternative effective remedies. *Sarro*, 248 F.Supp.2d at 64. In *Malesko*, the Court in part rested its decision on the fact that redress was available to the plaintiff under the BOP's Administrative Remedy Program; and that, under state tort law, "alternative remedies are at least as great, and in many respects greater, than anything that could be had under *Bivens." Malesko*, 534 U.S. at 72, 122 S.Ct. 515. Indeed, the *Peoples* court heavily relied on this factor: *"[I]f other remedies are available*—including state negligence actions—the Supreme Court would not extend *Bivens* to private employees of government actors." *Peoples*, 2004 WL 74317 at *7 (emphasis added).

As the plaintiff in *Sarro,* plaintiff in this case is not eligible to seek redress through the BOP's Administrative Remedy Program.[2] However, even more importantly, this court does not believe it proper to make this issue (whether federal remedies are available to a federal prisoner at a privately-operated institution) entirely contingent upon whether there are adequate alternative state law remedies. As articulated in *Sarro,* such reasoning "would require a case-by-case analysis of state law and would cause the availability of a *Bivens* remedy to vary according to the state in which the institution is located, a result

that *Bivens,* itself sought to avoid." *Id.* at 64 (citing *Bivens,* 403 U.S. at 389, 91 S.Ct. 1999 (indicating that remedies for constitutional violations should not depend on the law of the state in which the violation occurred)). This holds especially true in the instant case, where several of plaintiff's causes of action do not appear to fall under the guise of traditional negligence law. To simply examine each count, determine whether it could be brought under state law and, if so, conclude that a *Bivens* cause of action is unavailable, runs afoul of the principles set forth in *Bivens* which, to date, remains good law.

Finally, the court whole-heartedly agrees with the reasoning in *Sarro* regarding the potential unfair disparity between those actions that federal prisoners in government-run facilities could bring and those that prisoners in privately owned facilities could bring. Indeed, maintaining parity was one factor underlying the decision in *Malesko*. In rejecting Malesko's *Bivens* claim against the private corporation operating the prison, the Court stated that "no federal prisoners enjoy respondent's contemplated remedy" because, while a prisoner at a federal prison can bring a *Bivens* action against an individual officer, he "may not bring a *Bivens* claim against the officer's employer, the United States or the BOP." *Malesko*, 534 U.S. at 71–72, 122 S.Ct. 515. As reasoned in *Sarro:*

> Refusing to apply *Bivens* to a federal prisoner's claim for alleged constitution-

---

cised ultimate authority over him. The mere fact that the United States government delegated this function to a private company in no way alters this fact. As such, the court finds the private prison employees to be federal actors within the meaning of *Bivens.*

2. The BOP's Administrative Remedy Program applies only to those incarcerated in BOP facilities and half-way houses operated under

contract with the BOP. It does not apply to individuals confined in other facilities. 28 C.F.R. § 542.10 (2001) (the ARP "does not apply to inmates confined in other non-federal facilities"). As pointed out in *Sarro,* this fact readily distinguishes *Malesko,* which involved a federal prisoner confined at a half-way house operated under contract with the BOP.

al violations simply because that prisoner is incarcerated at a privately-operated prison rather than a government-operated prison would deprive that prisoner of a remedy available to prisoners at government-operated facilities, thereby running counter to the desire for parity expressed in *Malesko*.

*Sarro*, 248 F.Supp.2d at 63. This court believes that inmates incarcerated at prisons under contract by the federal government should enjoy the same constitutional protections as those inmates incarcerated at prisons actually run by the federal government.

The court denies defendants' motion to dismiss on this basis. Plaintiff may proceed against the individual defendants under *Bivens*. The court now turns to each count to determine whether plaintiff can state a claim upon which relief can be granted.

## B. Destruction of Alleged Critical Legal Papers

█ In Count I, plaintiff asserts that defendant Willingham destroyed critical legal papers that belonged to plaintiff. Specifically, plaintiff claims that he prepared written recollections of interrogations concerning the murder confession that he made, which were allegedly torn up while plaintiff was previously detained at the Wyandotte County Jail. Plaintiff claims that he prepared these written recollections as an accounting of the facts pertaining to his 1998, 1999, and 2000 interrogations.

Plaintiff states that he placed the torn up paper into a plastic bag and the bag was transferred with plaintiff to CCA in October 2001. In plaintiff's Amended Complaint, he states that, on May 14, 2002, he was moved from one cell at CCA to a different cell, that defendant Willingham and other officers entered his cell and packed his belongings for the move and that, in the course of the move, defendant Willingham removed and disposed of the plastic bag of materials which, plaintiff alleges, was "clearly marked as containing legal materials." Plaintiff claims that these past recollections recorded were critical to his defense against the federal capital charges.

Plaintiff states that the plastic bag contained notes regarding the interrogations that would have been useful in his attempt to suppress statements that he made to law enforcement agents. Plaintiff admits that the notes were ripped into pieces like a puzzle but states that he intended to piece them back together. Plaintiff alleges that he has been denied access to the courts for the purpose of his right to suppression of his statements to police.

Defendants first contend that the alleged torn paper was never brought to CCA. Defendants have provided to the court copies of documents purported to be accountings of the belongings that plaintiff brought with him to CCA. The court notes that no bag of torn up legal papers is specifically mentioned in these documents. However, no affidavit has been offered authenticating these documents and, as such, the court will not consider these items in deciding defendants' Motion to Dismiss.

However, even considering the contents of the documents, the court points out that references are made to a "box of legal papers" and "legal papers," with no further detailed accounting of the items contained therein. Such references may, or may not have, included the papers at issue here. As such, the court cannot conclude as a matter of law that plaintiff never brought the torn up papers to CCA.

Defendants point out that plaintiff previously brought an action against Wyandotte

County, Kansas jailers for their tearing up of legal papers. *Purkey v. Green*, District of Kansas case number 01–CV–3134–JAR, 2003 WL 21087962. Defendants contend that there is no mention in that previous lawsuit of the papers that plaintiff is now claiming and that such an omission proves there were no torn-up written recollections. However, the court has not been provided the pleadings in that state court action and, accordingly, the court cannot determine whether the documents allegedly torn up by Wyandotte County jailers included those past recollections recorded at issue here.

■ Finally, defendants contend that plaintiff has failed to specify what, if any, evidentiary void was created by the alleged loss of the bag of torn papers. Destruction of a prisoner's personal writings or diaries to be used in legal matters does not constitute denial of access to court. To show such a violation, plaintiff must demonstrate that he was prejudiced by the loss of the bag of torn paper. *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998).

In considering a motion to dismiss, the court must accept all well-pleaded factual allegations as true. Plaintiff alleges that his written recollections recounted representations that were made to him by law enforcement officers which led him to believe that, if he provided information regarding the killing of a Missouri woman, he would be sentenced to life imprisonment in a federal penitentiary and would be permitted to serve that sentence in that institution in lieu of service in the state penitentiary system. Plaintiff alleges that, after receiving these assurances, he answered the officers' questions.

Plaintiff further alleges that, at the time of suppression proceedings on the murder case prosecution, more than four years had passed since the events of December 1998,

and despite his best efforts, plaintiff could not remember all of the details concerning what occurred during his interrogations in December of 1998. Plaintiff further alleges that, because of the disposal of his legal materials, his ability to use these past recollections recorded, to refresh his current recollection, and as independent evidence of the events of December of 1998, was hindered. The court concludes that plaintiff's allegations are sufficient at this stage in the litigation to show he was prejudiced. Defendants' motion to dismiss Count I is denied.

## C. Alleged Denial of Free Speech and Association

■ In Count II, plaintiff alleges that his rights to free speech and association were violated when defendants Lawrence, Ford, and Banks took disciplinary action against plaintiff because plaintiff assisted other inmates with the preparing of grievances against CCA. Defendants appear not to deny the fact that plaintiff was disciplined for assisting other inmates with the filing of grievances.

■ A prisoner "does not have a protected interest in providing legal representation to other inmates." *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir.1990). However, in *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Supreme Court invalidated a prison rule that prohibited prisoners from assisting one-another in preparing habeas corpus petitions for filing. The Court held that "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation ... barring inmates from furnishing such assistance to other prisoners." *Id.* at 490, 89 S.Ct. 747; *see also Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir.1993) ("[P]risoners are entitled to

receive assistance from jailhouse lawyers where *no reasonable alternatives are present* and to deny this assistance denies the constitutional right of access to the courts.").

Plaintiff alleges in his Amended Complaint that CCA does not provide a law library. Rather, CCA employs an attorney, Gary Fuller, on a part-time basis to answer legal research requests of CCA inmates. Plaintiff further alleges that Mr. Fuller has a policy under which he refuses inmate requests for assistance in preparing legal actions against CCA and its personnel.

Where a plaintiff failed to allege "that the inmates he assists had no alternative to his assistance," the Tenth Circuit has affirmed the dismissal of that action. *Tebbetts v. Whitson*, 105 F.3d 670 (10th Cir. 1997) (unpublished). At this juncture, the court finds plaintiff's allegation sufficient that Mr. Fuller does not assist in the preparation of grievances against CCA. In other words, plaintiff could prove a set of facts that CCA offers no reasonable alternatives to assist inmates in the preparation of grievances. However, plaintiff should be mindful that the right to inmate assistance does not extend to the assistance of a particular inmate where more than one is available and qualified to assist. *See Hannon v. Terra*, 1995 WL 129219, at *12 (E.D.Pa.1995). As such, to ultimately prevail at trial on this claim, plaintiff must prove that he provided the only legal assistance to CCA inmates. The court declines to dismiss Count II at this time.

### D. Alleged Unsafe Shower Conditions

■ Plaintiff asserts a *Bivens* action in Count III against individual defendants Lawrence and Ford, and a state law negligence action in Count IV against CCA, Lawrence, and Ford, for injury due to alleged unsafe shower conditions. Specifically, plaintiff alleges that, prior to inmates being removed from their cell, inmates were placed in handcuffs and kept in handcuffs until locked inside the shower. At that point, as alleged by plaintiff, inmates were required to turn their backs to the door, squat down, and reach back to the opening of the door so the handcuffs could be removed. Plaintiff alleges that this opening was two and one-half feet up from the bottom of the door. When finished showering, inmates were again required to squat down, with their backs to the door, so the handcuffs could be replaced. Plaintiff states in his Amended Complaint that this was pursuant to security policy developed and approved by defendants Lawrence, Ford, and others.[3] Plaintiff further states that the floor of the shower stall "was wet, and clearly appeared wet" when plaintiff would enter the shower. (Amended Complaint, Count III, ¶4; Count IV, ¶4).

Plaintiff states that, three times while plaintiff was squatting down to be handcuffed or unhandcuffed through the opening in the shower door, plaintiff slipped and fell, thereby sustaining injuries. Plaintiff alleges that defendants were aware that other inmates had fallen in the same showers and in a similar manner as plaintiff.

Plaintiff contends that the practice of handcuffing inmates in the showers, and requiring squatting for disposition of handcuffs, caused a substantial risk of harm to his health and safety and that defendants

---

**3.** Defendants admit that CCA does have a policy, # 10–100, which requires that all inmates in segregation, pre-hearing detention, protective custody and security detention be restrained with hand irons behind their backs outside of the segregation unit. This policy applies to all prisoners in segregation.

were deliberately indifferent to this risk. This allegation concerns the conditions of plaintiff's confinement at the jail.

■ The correct standard for an Eighth Amendment conditions-of-confinement claim requires a knowing disregard of "excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Garrett v. Stratman,* 254 F.3d 946, 949 (10th Cir.2001). Furthermore, the condition must deprive the inmate of "the minimal civilized measure of life's necessities" and the official involved must have a "sufficiently culpable state of mind" amounting to "deliberate indifference" to a "substantial risk of serious harm to an inmate." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998) (internal quotations omitted).

Slippery shower floors constitute a daily risk faced by the public at large. Noting cases from other jurisdictions, the Tenth Circuit has held that a soapy shower floor does not constitute an excessive or substantial risk nor deprive an inmate of the minimal civilized measure of life's necessities. *Flandro v. Salt Lake County Jail,* 53 Fed.Appx. 499, 500 (10th Cir.2002) (citing *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir.1993)) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment"). Even considering the additional fact that inmates are required to squat down in the shower for removal and placement of handcuffs does not convince this court that such a procedure constitutes an excessive or substantial risk nor does the practice deprive an inmate of the minimal civilized measure of life's necessities. This holds true especially in light of the longstanding notion that maintaining jail security is a legitimate governmental purpose, and prison officials have wide discretion to determine measures to be taken to preserve order and security in a detention facility. *Turner v. Safley,* 482 U.S. 78, 84–85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The court holds that plaintiff has failed to state a constitutional claim for unsafe shower conditions as set forth in Count III.

Plaintiff's Amended Complaint added a state law negligence claim for unsafe shower conditions. Because this claim was not included in plaintiff's original Complaint, defendants did not move (and could not have moved) for dismissal of this count. Accordingly, the court declines to rule at this time on whether plaintiff has stated a negligence claim as asserted in Count IV of plaintiff's Amended Complaint.

**E.   Alleged Retaliation**

■ Plaintiff alleges in Count V that defendants Lawrence, Ford, Willingham, and Sullivan retaliated against him for his filing of grievances. In most circumstances, a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief. Accordingly, a prisoner who is punished for actually filing grievances by placing him in disciplinary segregation may state a claim for both an access to courts and a First Amendment violation. *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir.1990); *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights").

■ Plaintiff readily admits he filed numerous grievances while incarcerated at CCA. Plaintiff alleges that, in retaliation for filing these grievances, defendants harassed and threatened plaintiff, placed plaintiff in segregation, entered plaintiff's cell and scattered and disassembled his papers and belongings, denied plaintiff vis-

 

its with his wife, and confiscated plaintiff's legal materials. A liberal reading of the Amended Complaint indicates that plaintiff has sufficiently pled retaliation in response to his numerous grievances. However, not every alleged retaliatory act asserted by plaintiff amounts to a constitutional violation. *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979) (a claim that a prisoner has been verbally threatened is not sufficient to state a claim under § 1983). Moreover, at trial, plaintiff must produce evidence that "but for the retaliatory motive, the incidents to which he refers ... would not have taken place." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998). In other words, plaintiff will have to show that filing a grievance was the but-for cause of his segregation. Plaintiff has pled retaliation sufficient to survive defendants' motion to dismiss.

### F. Alleged Excessive Use of Force

Plaintiff's claim regarding defendants Daugherty and Adkins's excessive use of force was not included until plaintiff amended his original complaint. Because defendants' motion to dismiss was filed before plaintiff's Amended Complaint, defendants did not move to dismiss this count. Accordingly, Count VI remains in this lawsuit.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss (Doc. 16) is granted with respect to Count III, and denied in all other respects.