TACHA, Chief Circuit Judge.
Plaintiff-Appellant Cornelius E. Peoples filed two separate claims for damages pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging violations of his constitutional rights while being held in pretrial detention at a privately run prison under contract with the United States Marshal Service. In the first suit (Peoples I), Mr. Peoples alleged a violation of his Eighth Amendment right to be free from cruel and unusual punishment; in the second suit (Peoples II), he brought a variety of claims based on his Fifth Amendment right to due process. In both suits, Mr. Peoples named the Corrections Corporation of America (“CCA”), the operator of the private prison, and several of its employees (“individual Defendants”) as defendants. On appeal, however, Mr. Peoples dropped the claims against CCA, and therefore only the individual Defendants are before us.
In Peoples I, the District Court dismissed the case against the individual Defendants for lack of subject matter jurisdiction. Peoples v. CCA Detention Ctr., 2004 WL 74317 at *1 (D.Kan. Jan. 15, 2004) (unpublished). A different district court judge heard Peoples II and took jurisdiction over Mr. Peoples’s Bivens claims against the individual Defendants but dismissed his suit for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). Peoples v. CCA Detention Ctr., 2004 WL 2278667 at *7 (D.Kan. Mar. 26, 2004) (unpublished). Mr. Peoples timely appeals both Peoples I and Peoples II. We take appellate jurisdiction under 28 U.S.C. §§ 1291 and 1331 and AFFIRM the dismissal of both complaints.
I. BACKGROUND
We present the facts as alleged in Mr. Peoples’s complaints. At the times relevant to these appeals, Mr. Peoples was a federal prisoner held in pretrial detention. CCA is a private, for-profit corporation that operates the Leavenworth pretrial detention center under a contract with the United States Marshal Service. The Marshal Service directed that CCA hold Mr. Peoples at the Leavenworth CCA facility while he awaited trial in the Western District of Missouri. Mr. Peoples was placed in isolation upon his arrival at the CCA facility in July 2001.

A. Facts Relevant to Peoples I

After receiving clearance from the Marshal Service, Mr. Peoples was released into the general prison population. CCA staff placed him in Pod-H. Several members of the so-called Mexican Mafia gang were also housed in Pod-H. Because of his religion, Mr. Peoples feared that the members of the Mexican Mafia would physically assault him. Over several days, he filed several informal and formal grievances to this effect with CCA staff members. Nevertheless, he was not transferred to a new pod.
Early in the morning on August 1, 2001, Mr. Peoples was attacked by members of the Mexican Mafia. After the attack, Mr. *1094 Peoples was not transferred to a new pod. Later that same day, at approximately 11 a.m., Mr. Peoples was attacked again. This time, the members of the Mexican Mafia struck him with padlocks, chains, and full soda cans. After this second incident, Mr. Peoples was reassigned to Pod-A.
Subsequently, Mr. Peoples, proceeding-pro se, brought suit in the District of Kansas seeking compensatory and punitive damages.[1] His suit was construed as raising a Bivens claim, alleging Eighth Amendment violations. The District Court in Peoples I held that Malesko precluded federal jurisdiction over Mr. Peoples’s suit against both CCA and the individual Defendants, and the court dismissed the claim. In ruling on the claim against the individual Defendants, the District Court held that because “other remedies are available — including state negligence actions — the Supreme Court would not extend Bivens to private employees of government contractors” and dismissed the claim for lack of jurisdiction. Peoples I, 2004 WL 74317 at *7. With the assistance of counsel, Mr. Peoples timely appeals the District Court’s ruling.

B. Facts Relevant to Peoples II

Mr. Peoples was assigned to administrative segregation upon his arrival at CCA because of lack of bed space, and he remained in administrative segregation for a total of thirteen months by order of the Marshal Service. Mr. Peoples’s continued segregation resulted from the Marshal Service’s and CCA officials’ determination that he was an escape risk. He did not receive written notice of the reasons for his segregation immediately upon his placement in segregation and he was not allowed a hearing on his segregation status for five months.
While in segregation, Mr. Peoples did not have access to a law library. He could obtain legal materials through Defendant Appellee Gary Fuller, who is an attorney, but he was limited to obtaining case law for which he had exact citations. Mr. Peoples acknowledges that he contacted Mr. Fuller and requested various resources from him, which were provided.
Finally, while Mr. Peoples was in the CCA facility, the individual Defendants informed Mr. Peoples that inmate telephone calls are randomly monitored in an effort to deter inmates from using facility phones for criminal or other improper purposes. Mr. Peoples was also told that CCA does not monitor or record calls from an attorney’s phone when the attorney has properly requested blocking. Mr. Peoples believes that his phone calls with his attorney were unconstitutionally monitored.
Mr. Peoples, again proceeding pro se, filed a Bivens action, asserting that this conduct violated his Fifth Amendment due process rights. Like the judge in Peoples I, the judge in Peoples II viewed the Bivens issue as jurisdictional. Though indicating that, after Malesko, a Bivens claim is probably not available to a plaintiff suing an employee of a private prison who has other means of relief, see Peoples II, 2004 WL 2278667 at * 3, the District Court nevertheless rejected the individual Defendants’ jurisdictional arguments, stating “because the Tenth Circuit has not fully addressed this issue, the court will assume *1095 arguendo that a Bivens action against the individual employees is available and will examine the sufficiency of plaintiffs complaint.” Peoples II, 2004 WL 2278667 at *4. The District Court then addressed Mr. Peoples’s complaint in light of the individual Defendants’ Rule 12(b)(6) motion to dismiss. The court granted the motion on all of Mr. Peoples’s claims. Mr. Peoples timely appeals this ruling, and, unlike the appeal in Peoples I, he proceeds pro se in the Peoples II appeal.[2]
II. SUBJECT MATTER JURISDICTION
As noted, the District Court in Peoples I held that it did not have federal subject matter jurisdiction over Mr. Peoples’s suit against both CCA and the individual Defendants and therefore dismissed the suit. The District Court in Peoples II, however, asserted jurisdiction over the claims but dismissed them for failure to state a claim upon which relief may be granted. Therefore, we begin our analysis by resolving this important jurisdictional issue, which we review de novo. See Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 368 F.3d 1072, 1074 (10th Cir.2004).
Article III of the Federal Constitution states that lower federal courts have original jurisdiction over “all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority.” U.S. Const., Art. Ill, §§ 1, 2. Congress currently provides that the “district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331.
In Bell v. Hood, the Supreme Court explained that “where the complaint ... is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions^] ... must entertain the suit.” 327 U.S. 678, 681-82, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (emphasis added). The two “possible exceptions” are claims that “clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction” or claims that are “wholly insubstantial and frivolous.” Id. at 682-83, 66 S.Ct. 773; Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1231 (10th Cir.2005).
Mr. Peoples’s claims easily meet the basic requirements for federal question jurisdiction. He alleges that CCA and the individual Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fifth Amendment right to due process. “[I]t is clear from the way [the complaint] was drawn that [Mr. Peoples] seek[s] recovery squarely on the ground that respondents violated the [Fifth and Eighth Amendments].” Bell, 327 U.S. at 681, 66 S.Ct. 773. Moreover, Mr. Peoples’s claims are not immaterial, “but form the sole basis of the relief sought.” Id. at 683, 66 S.Ct. 773. “Nor can we say that the cause of action is so patently without merit as to justify ... the court’s dismissal for want to [sic] jurisdiction.” Id.; see also Davis v. Passman, 442 U.S. 228, 236, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (“It is clear that the District Court had jurisdiction under 28 U.S.C. § 1331(a) to consider petitioner’s [Bivens] claim [that respondents violated her Fifth Amendment rights].”); Massey v. Helman, 196 F.3d 727, 737-38 (7th Cir. *1096 1999) (explaining that “the appropriate basis for dismissing a Bivens claim ... is failure to state a claim upon which relief can be granted, not lack of subject matter jurisdiction.”).[3]
Nonetheless, in both Peoples I and Peoples II the District Court questioned whether jurisdiction lies when a plaintiff sues employees of a private corporation— as opposed to federal officials — who operate a prison pursuant to a contract with the United States. 2004 WL 74317 at * 3. Guided by the Supreme Court’s pronouncements in Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001), the District Court in Peoples I ultimately held that it lacked subject matter jurisdiction because Mr. Peoples had a state court remedy against the private employees. Id. at *7. The District Court in Peoples II, however, exercised jurisdiction over Mr. Peoples’s claims but ultimately dismissed them under Rule 12(b)(6) — again citing Malesko as the basis for its ruling.
While we reserve a full discussion of Malesko for Part III, we must point out here that contrary to the District Court’s apparent understanding, Malesko’s holding that there is no private right of action for damages against private entities that engage in allegedly constitutional deprivations does not indicate that the federal courts lack jurisdiction to hear such a claim. Rather, Bivens and its progeny, including Malesko, centered on the existence of a remedy for the alleged violation of federal rights. These cases explicitly answered the question left unanswered in Bell — -namely, “whether federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments.” Bell, 327 U.S. at 684, 66 S.Ct. 773; see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 398, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (distinguishing the “cause-of-action” argument from jurisdictional questions). In fact, there is no power to imply a Bivens cause of action unless a court has first satisfied itself that jurisdiction exists. See Malesko, 534 U.S. at 66, 122 S.Ct. 515 (stating that authority to imply a Bivens action “is anchored in our general jurisdiction to decide all cases ‘arising under the Constitution, laws or treaties of the United States.’ ”); Simmat, 413 F.3d at 1230 (after properly finding jurisdiction, addressing whether plaintiff stated a claim upon which relief may be granted pursuant to Bivens). As such, we hold that both district courts had jurisdiction to hear all of Mr. Peoples’s constitutional claims. We need not remand in either case, however, because we also hold that Mr. Peoples fails to state a claim upon which relief may be granted. See Ross v. United States Marshal, 168 F.3d 1190, 1194 n. 2 (10th Cir.1999) (appellate court may affirm the district court’s judgment on any ground supported by the record, provided the parties have had a fair opportunity to develop the record).
III. BIVENS CLAIMS AGAINST EMPLOYEES OP A PRIVATE PRISON
A.
Thirty-four years ago, the Supreme Court held that plaintiffs may sue federal *1097 officials in their individual capacities for damages for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. § 1983. Bivens, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. In that ease, agents from the Federal Bureau of Narcotics, acting under color of federal law, unlawfully entered and searched Mr. Bivens’ apartment and unlawfully arrested him. The Court concluded that although Congress had not statutorily provided a remedy for violations of the Fourth Amendment and that the amendment “does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation,” federal courts have the power, in certain situations, to imply such a cause of action directly from the Constitution. Id. at 396, 91 S.Ct. 1999.
In making this determination, the Court first noted that it had “long since rejected the notion that the Fourth Amendment proscribes only such conduct as would, if engaged by private persons, be condemned by state law.” Id. at 392, 91 S.Ct. 1999. Second, the Court noted that Mr. Bivens might not have a cause of action under state law — namely, trespass — because a person is generally not considered to be a trespasser if the property owner has consented to the alleged trespasser’s entry. Id. at 394, 91 S.Ct. 1999. Finally, the Court explained that “damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty,” id. at 395, 91 S.Ct. 1999, and that the case at hand presented “no special factors counseling hesitation in the absence of affirmative action by Congress” such that an implied cause of action for damages should not be permitted, id. at 396, 91 S.Ct. 1999.
Since Bivens, the Court has implied a cause of action for money damages directly under the Constitution on only two other occasions. In Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court employed nearly the same reasoning it used in Bivens and held that the plaintiff stated a cause of action for money damages against her former employer, a member of the United States Congress, for violations of the Due Process Clause of the Fifth Amendment. The Court emphasized the importance of the dearth of alternate remedies, stating “there are available no other alternative forms of judicial relief. For Davis, as for Bivens, ‘it is damages or nothing.’ ” 442 U.S. at 245, 99 S.Ct. 2264 (quoting Justice Harlan’s concurrence in Bivens, 403 U.S. at 410, 91 S.Ct. 1999).
One year later, in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court held that federal prison officials may be sued for violations of the Cruel and Unusual Punishment Clause of the Eighth Amendment, notwithstanding the fact that unlike the plaintiffs in Bivens and Davis, the plaintiff in Carlson had another remedy. Shifting slightly from its reasoning in Bivens and Davis, the Court explained that Bivens actions are presumed to be available but that “[s]uch a cause of action may be defeated ... in two situations.” Carlson, 446 U.S. at 18, 100 S.Ct. 1468. First, the defendants may show the existence of “ ‘special factors counselling hesitation in the absence of affirmative action by Congress.’ ” Id. (quoting Bivens, 403 U.S. at 396, 91 S.Ct. 1999). Second, the defendants may “show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.” Id. at 18-19, 100 S.Ct. 1468.
Noting that the defendants in Carlson were not members of another branch of government, the Court concluded that there were no special factors counseling hesitation. Id. at 19, 100 S.Ct. 1468. The *1098 Court then determined that Congress had not explicitly declared any other remedy to be a substitute for a Bivens action. Although the plaintiff could have brought suit against the United States under the Federal Tort Claims Act, the Court reasoned that it was “crystal clear that Congress views FTCA and Bivens as parallel, complementary causes of action.” Id. at 19-20, 100 S.Ct. 1468.
The Court then went on to identify four other factors that demonstrated a lack of congressional intent that the FTCA should defeat a Bivens cause of action. Id. at 20-21, 100 S.Ct. 1468. First, because only the United States — as opposed to an individual official — could be sued under the FTCA, Bivens “is a more effective deterrent than the FTCA remedy.” Id. at 21, 100 S.Ct. 1468. Second, punitive damages might be available under Bivens, but not under the FTCA. Id. at 21-22, 100 S.Ct. 1468. Third, a plaintiff may have a jury in Bivens, whereas only judges hear FTCA claims. Id. at 22, 100 S.Ct. 1468. And fourth, the viability of an FTCA claim turns on the law of the state in which the action occurred, but “it is obvious that the liability of federal officials for violations of citizens’ constitutional rights should be governed by uniform rules.” Id. at 23, 100 S.Ct. 1468.
Since Carlson was decided in 1980, however, the Court has refused to recognize a cause of action for money damages directly from the Constitution in any other case. In Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Court declined to imply a Bivens action for enlisted military personnel who alleged that they had been injured by the unconstitutional actions of their superior officers and who had no remedy against the Government itself. The Court reasoned that “[t]aken together, the unique disciplinary structure of the military establishment and Congress’ [unique] activity in the field constitute ‘special factors’ which dictate that it would be inappropriate to provide enlisted military personnel a Bivens-type remedy against their superior officers.” Id. at 304, 103 S.Ct. 2362 (citation omitted); see also United States v. Stanley, 483 U.S. 669, 681, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (holding Bivens actions inapplicable to military personnel “whenever the injury arises out of activity ‘incident to service.’ ”).
That same year, the Court refused to recognize a Bivens claim for First Amendment violations “aris[ing] out of [a government] employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States.” Bush v. Lucas, 462 U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). The Court held that because the congressionally installed administrative system “provide[d] meaningful remedies for employees who may have been unfairly disciplined for making critical comments about their agencies,” id. at 386, 103 S.Ct. 2404 (note omitted), a Bivens action was inappropriate even though it assumed a First Amendment violation had occurred and acknowledged that the administrative “remedies do not provide complete relief for the plaintiff,” id. at 388, 91 S.Ct. 1999.
Similarly, in Schweiker v. Chilicky, 487 U.S. 412, 425, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Court considered the propriety of Bivens claims filed by disabled social security beneficiaries who eventually received benefits but who had “not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits.” The Court reasoned that because “Congress ... has addressed the problems created by state agencies’ wrongful termination of disability benefits” *1099 through the creation of wide-ranging administrative remedies, a Bivens action would be inappropriate. Id. at 429, 108 S.Ct. 2460.
In FDIC v. Meyer, 510 U.S. 471, 473-74, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the Court considered whether a Bivens action could be brought directly against a federal agency, as opposed to the federal agents in their individual capacities. The Court declined to extend Bivens to such an action because it would eviscerate the Bivens remedy. It reasoned that if it “impl[ied] a damages action against federal agencies ... there would be no reason ... to bring damages actions against individual officers [and] ... the deterrent effects of the Bivens remedy would be lost.” Id. at 485, 114 S.Ct. 996. The Court also added that “unlike in Bivens, there are ‘special factors counselling hesitation’ in the creation of a damages remedy [against a federal agency]. If we were to recognize a direct action for damages against federal agencies, we would be creating a potentially enormous financial burden for the Federal Government.” Id. at 486, 114 S.Ct. 996 (citation omitted).
B.
Four years ago, the Supreme Court in Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456, underscored its hesitation to imply a Bivens cause of action in a new circumstance. In that case, Mr. Malesko, a federal offender, sued Correctional Services Corporation (“CSC”), a private corporation under contract with the federal Bureau of Prisons to operate a halfway house. While Mr. Malesko was in CSC custody, its employees forced him to climb stairs to his fifth floor living quarters even though he had a known heart condition that entitled him to use the elevator. During his ascent, he suffered a heart attack, fell, and was injured. Mr. Malesko brought a Bivens action alleging Eighth Amendment violations against CSC for actual and punitive damages. The Court held that Meyer “forecloses the extension of Bivens to private entities.”[4] 534 U.S. at 66 n. 2, 122 S.Ct. 515.
In holding that Mr. Malesko did not have a Bivens claim against CSC, the Court applied the “core premise” of Bivens — which is concerned “solely with deterring the unconstitutional acts of individual officers” — without discussing the two-part test laid out in Carlson (i.e., whether there are “special factors counselling hesitation in the absence of affirmative action by Congress” or whether Congress “provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective”). See id. at 67, 71, 122 S.Ct. 515. The Court explained that it implied a cause of action in Davis “chiefly because the plaintiff lacked any other remedy for the alleged constitutional deprivation.” Id. at 67, 122 S.Ct. 515 (emphasis added). And it implied a cause of action in Carlson because the only other available remedy — the Federal Tort Claims Act — was an insufficient deterrent to individuals because only the United States was subject to suit under the FTCA. The Court then recognized that it has “consistently rejected invitations to extend Bivens ” except “to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally [as in Carlson ], or to provide a cause of action for a plaintiff who lacked any alternative remedy [as in *1100 Davis ].” Id. at 70, 122 S.Ct. 515. Neither circumstance was present in Malesko.
The Court found that Mr. Malesko did not lack an alternative remedy in part because of the existence of a state law claim for negligence. Id. at 74, 122 S.Ct. 515. The Court also explained that no federal prisoner “enjoyed [Mr. Malesko’s] contemplated remedy” — -namely, a Bivens suit against the prison or the United States — and that Congress, rather than the Court, was the more appropriate branch “to impose asymmetrical liability costs on private prison facilities.” Id. at 71-72, 122 S.Ct. 515.
Therefore, the Court determined that Mr. Malesko “is not a plaintiff in search of a remedy as in Bivens and Davis. Nor does he seek a cause of action against an individual officer, otherwise lacking, as in Carlson.” Id. at 74, 122 S.Ct. 515. Moreover, the Court said that “[t]he caution toward extending Bivens into any new context, a caution consistently and repeatedly recognized for three decades, forecloses such an extension here.” Id.
C.
Following Malesko, three district courts — but no Court of Appeals — have considered whether the existence of a state-law cause of action for damages, standing alone, precludes a Bivens claim against an employee of a privately operated prison. The courts fall into two groups. The District of Rhode Island issued the lead opinion in the first group, holding that the existence of state-law relief does not necessarily bar a Bivens cause of action against such individual defendants. Sarro v. Cornell Corrections, Inc., 248 F.Supp.2d 52 (D.R.I.2003); see also Jama v. INS, 343 F.Supp.2d 338, 362-63 (D.N.J.2004) (adopting Sarro); Purkey v. Corrections Corp. of Am., 339 F.Supp.2d 1145, 1148-51 (D.Kan.2004) (same). The case in the opposing group is one of the cases under review in which the District Court held that because “other remedies are available — including state negligence actions— the Supreme Court would not extend Bivens to private employees of government contractors. This Court cannot ignore Malesko’s statement that where a state remedy is available, the Supreme Court will not imply a new Bivens action.” Peoples I, 2004 WL 74317 at *7.[5] We start with the Sarro decision.
The facts in Sarro are quite similar to those in Peoples I. The plaintiff was in pretrial detention at the Donald Wyatt Detention Center in Rhode Island, a privately run prison under contract with the Marshal Service. The plaintiff feared that he would be attacked by African-American inmates, and asked the guards several times to be put in protective custody. The guards refused. Then during a fire drill, the plaintiff was attacked and injured. The plaintiff brought a Bivens claim alleging Eighth Amendment violations against the corporation and the individual guards. The Sarro court held that Malesko barred the suit against the corporation, but that the suit against the guards could proceed.
In considering the impact of Malesko, the Sarro court noted that the core purpose of a Bivens suit is to deter individuals and found that because the plaintiff was suing individual guards, this purpose was *1101 served. 248 F.Supp.2d at 62-63. Next, the court found that allowing a Bivens suit against an individual guard would foster parity between prisoners held in BOP prisons and private prisons. Id. Finally, the court considered the effect of the availability of other remedies. The court noted that, unlike Malesko, Mr. Sarro did not have access to alternative federal remedies because he was held in pretrial detention. Id.; see also 28 C.F.R. § 542.10 (2001) (BOP administrative remedies “do[] not apply to inmates confined in other non-federal facilities”).
As to the possibility of a state tort claim, the court explained:
[WJhile Malesko indicates that the existence of state law remedies may be a factor to be considered, in applying Bivens, state law remedies cannot be construed as a manifestation of Congressional intent to preclude the application of Bivens. Indeed, making the federal remedies available to a federal prisoner at a privately-operated institution contingent upon whether there are adequate alternative state law remedies would require a case-by-case analysis of state law and would cause the availability of a Bivens remedy to vary according to the state in which the institution is located, a result that Bivens, itself sought to avoid.
Id. (citations omitted). Thus, the Sarro court held that a Bivens action could be brought against guards of a privately run, federal, pretrial detention facility.
Peoples I was decided after Sarro. After considering Sarro’s reasoning, the District Court concluded that it “has some appeal” but declined to follow it. 2004 WL 74317 at *7. Instead, the District Court determined that, under Malesko, if a state tort claim may be brought, then Bivens is not available; it reasoned that “Malesko makes it clear that because [Mr. Peoples] has a negligence remedy, a majority of the Supreme Court would not imply' a Bivens claim against individual CCA employees.” Id. at *6. That is to say, the District Court held that the possibility of a state-law remedy is a sufficient reason, standing alone, not to imply a Bivens action. It then granted the defendants’ motion to dismiss for lack of subject matter jurisdiction.
As noted earlier, the District Court did, in fact, have jurisdiction to entertain Mr. Peoples’s Eighth Amendment claim. We agree with the District Court, however, that there is no implied private right of action for damages under Bivens against employees of a private prison for alleged constitutional deprivations when alternative state or federal causes of action for damages are available to the plaintiff. Such a claim is therefore properly dismissed under Rule 12(b)(6). We base our holding upon the Court’s statements in Malesko that the purpose of Bivens is only “to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally [as in Carlson ], or to provide a cause of action for a plaintiff who lacked any alternative remedy [as in Davis ].” Malesko, 534 U.S. at 70, 122 S.Ct. 515. An alternative cause of action for damages against an individual defendant eliminates either of those two circumstances, and therefore Bivens and its limited progeny do not apply in such a case.
We recognize that at first blush Carlson may appear to control this case. In Carlson, because the United States was potentially liable under the FTCA, there appears to have been a state-law cause of action available against the private individual defendants for the particular Eighth *1102 Amendment violation at issue.[6] The Court nonetheless held that Bivens was available, which might indicate that a state tort cause of action will not preclude a Bivens cause of action.
Importantly, however, the Court in Carlson did not address the specific question of whether a potential state law cause of action against and individual will preclude an implied Bivens claim. Instead, the Court stated that the issue was whether “a remedy [is] available directly under the Constitution, given that respondent’s allegations could also support a suit against the United States under the Federal Tort Claims Act?” Carlson, 446 U.S. at 16-17, 100 S.Ct. 1468 (emphasis added). Answering in the affirmative, the Court reasoned that Congress had not explicitly provided that the FTCA should supplant Bivens claims in part because only the United States — rather than the individual officers — could be sued under the FTCA.
Later, the Malesko Court underscored that this was the issue in Carlson, stating that “[i]n Carlson, we inferred a right of action against individual prison officials where the plaintiffs only alternative was a Federal Tort Claims Act (FTCA) claim against the United States. We reasoned that the threat of suit against the United States was insufficient to deter the unconstitutional acts of individuals.” Malesko, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (citations omitted). Indeed, according to the Malesko Court, the sole purpose in extending Bivens in Carlson was “to provide an otherwise nonexistent cause of action against individual officers.” Id. at 70, 122 S.Ct. 515.
This is not to say, however, that we do not recognize the tension between Carlson and Malesko. The Malesko Court’s reading of Carlson perhaps is not the only reading of that case, but we note that— indeed, as we described above — the Court has explained its approach to Bivens claims in a variety of ways in the thirty-four years since Bivens itself was decided. We therefore think it prudent to follow the Court’s most recent pronouncement on the issue. Cf. Harlow v. Fitzgerald, 457 U.S. 800, 822 n. 2, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (Burger, C.J., dissenting) (noting that the Supreme Court has “an obligation to try to harmonize its holdings”).
Moreover, the Court has often focused upon the availability of alternative administrative procedures to provide meaningful, although not necessarily complete, redress for constitutional violations when determining whether a Bivens claim is available. See, e.g., Schweiker, 487 U.S. at 421-23, 108 S.Ct. 2460; Bush, 462 U.S. at 380-81, 388, 103 S.Ct. 2404. It follows, then, that the presence of an alternative cause of action against individual defendants provides sufficient redress such that a Bivens cause of action need not be implied. We also point out that in many cases, state law may provide more meaningful relief than Bivens itself; for example, the limitations imposed by the Prison Litigation Reform Act do not apply to state law claims. See, e.g., 18 U.S.C. § 3626(d) (“The limitations on remedies in this section shall not apply to relief entered by a State court based solely upon claims arising under State law.”).
We also note that our holding is not contrary to the Supreme Court’s admonition to avoid creating asymmetrical liability costs on privately operated facilities as compared to government-operated facili *1103 ties. Malesko, 534 U.S. at 71-72, 122 S.Ct. 515. There is no doubt that our holding renders federally employed guards subject to a Bivens claim while privately employed guards might not. This asymmetry, however, existed prior to today’s holding; it was not created by this decision. An implied right, by definition, is created by the courts and therefore cannot exist until it is judicially announced. We are cognizant that it is not the prerogative of federal courts, as Malesko underscored, to impose costs on one wrongdoer and not another. Our decision today — which simply declines to imply a cause of action directly from the Constitution such that a prisoner in a privately operated prison may sue a private employee of that prison for money damages for alleged constitutional violations notwithstanding the presence of an alternative cause of action — does not do so.
Finally, the dissent points out — and we agree — that there certainly are significant policy arguments that favor extending Bivens to the case at hand, including creating state-federal uniformity between 42 U.S.C. § 1983 suits and Bivens claims. In our view, however, extending this judicially-created remedy so that it more closely mirrors a statutory remedy is a decision best left for Congress.
In sum, Malesko indicates that a Bivens claim should not be implied unless the plaintiff has no other means of redress or unless he is seeking an otherwise nonexistent cause of action against the individual defendant. Therefore, we will not imply a Bivens cause of action for a prisoner held in a private prison facility when we conclude that there exists an alternative cause of action arising under either state or federal law against the individual defendant for the harm created by the constitutional deprivation. While there certainly are points to be made that would favor implying a Bivens claim in such a scenario, we are reminded that “[t]he caution toward extending Bivens remedies into any new context, a caution consistently and repeatedly recognized for three decades, forecloses such an extension here.” Malesko, 534 U.S. at 74, 122 S.Ct. 515.
IV. MR. PEOPLES’S BIVENS CLAIMS AGAINST CCA EMPLOYEES
A.
The next step in our analysis, then, is to determine whether Mr. Peoples could bring a claim under Kansas law in Peoples I or Peoples II. We begin with Peoples I. Below, the District Court operated under the assumption that Mr. Peoples could bring a Kansas-law claim. See Peoples I, 2004 WL 74317 at *7 (characterizing Mr. Peoples’s claim as “a quintessential claim of negligence.”). On appeal, neither the individual Defendants nor Mr. Peoples directly address the viability of Mr. Peoples’s claim under Kansas law. Because we find the answer to this question essential to our Bivens analysis, we address the issue sua sponte and conclude that Kansas law gives rise to a negligence claim for the injury Mr. Peoples suffered from the alleged Eighth Amendment violation.
 Under Kansas law, to recover for negligence, a plaintiff must establish the existence of a duty, a breach of that duty, an injury, and a causal connection between the breached duty and the injury. McGee v. Chalfant, 248 Kan. 434, 806 P.2d 980, 983 (1991). Here, Mr. Peoples argues that the individual Defendants owed a duty to protect him from injuries caused by the Mexican Mafia inmates. Under Kansas law, however, absent a special relationship between the parties, one does not owe another a duty to protect against injuries caused by third parties. See William E. Westerbeke & Stephen R. McAllister, Sur *1104 vey of Kansas Tort Law: Part I, 49 U. Kan. L.Rev. 1037, 1065-71 (2001).
Such a special relationship does arise between the guards of a state-run prison and a prisoner. In Washington v. State, 17 Kan.App.2d 518, 839 P.2d 555 (1992), the Kansas Court of Appeals considered whether a prisoner-plaintiff could bring a negligence claim against the state and prison officials after a fellow prisoner stabbed him in the eye. The court held that state “prison officials owe a duty of ordinary or reasonable care to safeguard a prisoner in their custody or control from attack by other prisoners.” Id. at 559;[7] see also Cupples v. State, 18 Kan.App.2d 864, 861 P.2d 1360, 1369 (1993).[8] Nonetheless, the state’s “duty to protect inmates from foreseeable harm does not make it the insurer of the safety of a prisoner from unforeseeable harm.” Cupples, 861 P.2d at 1369 (citing Washington, 839 P.2d at 559). Thus, to establish a duty to prevent injuries caused by a fellow inmate, a plaintiff must establish “that the danger [to the plaintiff] was known or, in the exercise of ordinary care, should have been known by a prison official.” Washington, 839 P.2d at 559. Accordingly, prison officials may “become[] liable in the event that damage proximately results from a failure to exercise reasonable care to prevent harm.” Id.
We conclude that the duty established in Washington between a state-run prison and a prisoner would apply to a privately run prison and a prisoner as well. The first step in the Washington court’s analysis was to determine if the plaintiffs claim could be brought under the Kansas Tort Claims Act (“KTCA”). Washington, 839 P.2d at 557-58. The KTCA provides that the state shall be liable for the acts of its employees “under circumstances where [the state], if a private person, would be liable under the laws of this state.” Kan. Stat. Ann. § 75-6103(a). Because the Washington court held under the KTCA that the state owed a duty to prisoners to prevent reasonably foreseeable injuries caused by fellow inmates, by implication the court found that “a private person” owes the same duty. As such, we conclude that under Kansas law CCA and the individual Defendants owed a duty to Mr. Peoples to prevent reasonably foreseeable injuries caused by fellow inmates.[9]
Finally, we do not read Malesko or prior decisions of the Court to mandate that we imply a cause of action directly *1105 from the Constitution simply because an alternative state law claim may be subject to a punitive damages cap[10] to which a federal claim is not. On the contrary, the Supreme Court has refused to imply a Bivens cause of action when there are alternative administrative remedies, even when, like a cap on punitive damages, those “remedies do not provide complete relief for the plaintiff.” Bush, 462 U.S. at 388, 103 S.Ct. 2404. Moreover, the Court has consistently held that the purpose of a Bivens claim is to deter the conduct of an individual official, and we conclude that compensatory damages plus the availability of some punitive damages further this goal. Cf. Carlson, 446 U.S. at 22, 100 S.Ct. 1468 (concluding that a claim under the FTCA is not as effective a deterrent as Bivens because no punitive damages are available in a FTCA suit). Finally, we again are reminded that Malesko explained that it had implied a Bivens claim in only two situations in the last thirty years: “to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy.” 534 U.S. at 70, 122 S.Ct. 515 (emphases omitted). That Mr. Peoples’s alternative negligence claim under Kansas law may be subject to a cap on punitive damages is thus not a reason to imply a Bivens claim in this case.
Therefore, because Kansas law gives rise to a cause of action for damages for the injuries Mr. Peoples suffered as the result of the alleged deprivation of his Eighth Amendment rights, we will not imply an additional cause of action directly under the Constitution in Peoples I. We therefore dismiss Mr. Peoples’s complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).[11]
B.
We turn now to Mr. Peoples’s three allegations of Fifth Amendment Due Process Clause violations in Peoples II— namely, that he was placed in segregation without a hearing, denied access to a law library, and denied unmonitored phone calls to his attorney. With respect to the first two claims, we need not even look to state law causes of action because we agree with the District Court that Mr. Peoples’s allegations, even liberally construed, do not rise to the level of a constitutional violation and should be dismissed under Rule 12(b)(6). With respect to Mr. Peoples’s third due process claim, we conclude that Kansas law provides an alternative cause of action and therefore, a cause of action under Bivens will not be implied. We turn first to Mr. Peoples’s claim that he was placed in segregation without a *1106 hearing, in violation of his due process rights.
Mr. Peoples asserts that the individual Defendants violated his due process rights as a pretrial detainee by placing him in segregation upon his arrival at CCA and keeping him in segregation for approximately thirteen months. Due process requires that a pretrial detainee not be punished prior to a lawful conviction. Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Littlefield v. Deland, 641 F.2d 729, 731 (10th Cir.1981).[12] However, the government may subject those awaiting trial to the conditions and restrictions of incarceration so long as those conditions and restrictions do not amount to punishment. Bell, 441 U.S. at 536-37, 99 S.Ct. 1861.
The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose. Id. at 538, 99 S.Ct. 1861. If an act by a prison official, such as placing the detainee in segregation, is done with an intent to punish, the act constitutes unconstitutional pretrial punishment. Id. Similarly, “if a restriction or condition is not reasonably related to a legitimate [governmental] goal- — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment.” Id. at 539, 99 S.Ct. 1861. On the other hand, restraints that “are reasonably related to the institution’s interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting.” Id. at 540, 99 S.Ct. 1861. Obviously, “ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both.” Id. at 561, 99 S.Ct. 1861. Thus, “no process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial reasons.” Higgs v. Carver, 286 F.3d 437, 438 (7th Cir.2002).
According to the complaint, however, Mr. Peoples was first placed in segregation because CCA lacked bed space in the general population. As the Seventh Circuit has held, and to which we agree, if the “only vacant cell left in the jail [is] in the segregation ward when a new prisoner arrive[s]; placing him in that cell would be a managerial decision ... [in which] no [due process] hearing would be required.” Id.
Mr. Peoples then admits that he remained in segregation due to his plot to escape from his previous pretrial detention facility, but argues that his continued segregation was intended as punishment. A detention center, however, has a legitimate interest in segregating individual inmates from the general population for nonpunitive reasons, including “threat[s] to the safety and security of the institution.” Brown-El v. Delo, 969 F.2d 644, 647 (8th Cir.1992) (citing Hewitt v. Helms, 459 U.S. 460, 474-76, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)); see also Bell, 441 U.S. at 540, 99 S.Ct. 1861. A substantiated escape threat, as is found here, is a legitimate nonpunitive rationale for Mr. Peoples’s continued segregation.
Therefore, we agree with the District Court that although Mr. Peoples alleges *1107 that his segregation was intended as a punishment,
[a] review of the facts plaintiff has alleged does not show that CCA and its employees intended to punish plaintiff by placing him in administrative segregation. Rather, it appears that CCA authorities acted in furtherance of legitimate penal objectives of safety and security of the institution in placing plaintiff in administrative segregation, notably, on the advice of the [Marshal Service] and based on concerns that plaintiff is an escape risk. Therefore, the court is unable to find any due process violation from plaintiffs assignment to and placement in administrative segregation.
Peoples II, 2004 WL 2278667 at *5. As such, we affirm the dismissal of this claim.
Next, Mr. Peoples asserts that he was denied adequate, effective and meaningful access to the courts while in pretrial detention because CCA did not provide him with a law library and because the lawyer who assisted him would only retrieve case law when a specific citation was provided. See generally Love v. Summit County, 776 F.2d 908, 912 (10th Cir.1985). “[T]he fundamental constitutional right of access to the courts requires prison authorities to ... provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law.” Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). As the Court has made clear, detainees are entitled to meaningful, but not total or unlimited, access to the courts. Id. at 823, 97 S.Ct. 1491. Moreover, an inmate’s contentions of deprivation of access to courts must show actual injury, not mere deprivation, as a “constitutional prerequisite” to bringing a claim. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Finally, it has been noted that “[t]he choice among various methods of guaranteeing access to the courts lies with prison administrators, not inmates or the courts.” Arney v. Simmons, 26 F.Supp.2d 1288, 1296 (D.Kan.1998).
We fully adopt the District Court’s analysis of Mr. Peoples’s claim on this issue:
[Mr. Peoples] does not allege that he is being denied total access to legal assistance. [Mr. Peoples] does not claim that CCA obstructed in any way his attempt to prosecute a claim, and he admits that CCA provided him with access to a person trained in the law, Mr. Fuller, and that he consulted with Mr. Fuller and requested case law from him. [Mr. Peoples] has not alleged that he has missed court dates, been unable to make timely legal filings, been denied legal assistance to which he was entitled, or lost a case which could have been won. In fact, [Mr. Peoples] appears to have been afforded the necessary resources to file the complaint in this action and has submitted additional pleadings that contain case law citations and analysis of relevant case law. The court concludes that CCA’s provision of a person trained in the law instead of a law library has afforded [Mr. Peoples] the necessary resources to prosecute his claims. The court finds that [Mr. Peoples] has failed to allege an actual injury resulting from the alleged denial of legal resources, and thus, his claim that defendants violated his due process right of access to the courts cannot withstand defendants’ motion to dismiss.
Peoples II, 2004 WL 2278667 at *6 (internal citation omitted).
As such, we affirm the District Court’s dismissal of this Fifth Amendment claim.
As to Mr. Peoples’s third Fifth Amendment Bivens claim, the failure to provide him unmonitored calls to his attorney, we conclude that Kansas law provides *1108 him with a cause of action for damages for such conduct. Kansas law criminally prohibits third parties from unlawfully monitoring phone calls without the permission of at least one of the communicants. See Kan. Stat. Ann. § 21-4001 (eavesdropping); Kan. Stat. Ann. § 21-4002 (breach of privacy); State v. Roudybush, 235 Kan. 834, 686 P.2d 100, 108 (1984). Moreover, in the view of the Kansas Attorney General, a violation of either criminal statute could subject one to civil liability for “intrusion upon seclusion.” See Kan. Op. Atty. Gen. No. 93-93 (1993). Monitoring a phone call between an inmate and his lawyer in violation of the Fifth Amendment, as Mr. Peoples alleges, falls within section 21-4002(a)(l)’s prohibition against “knowingly and without lawful authority ... [intercepting, without the consent of the sender or receiver, a message by telephone.” We conclude, then, that Mr. Peoples could have brought suit under Kansas law.[13] Therefore, we will not imply a Bivens claim as to this allegation.
VI. CONCLUSION
We hold that under Malesko, federal prisoners have no implied right of action for damages against an employee of a privately operated prison under contract with the United States Marshals Service when state or federal law affords the prisoner an alternative cause of action for damages for the alleged injury. We agree with the District Court in Peoples I that Mr. Peoples has such a state-law remedy and conclude, as to Mr. Peoples’s Eighth Amendment claim, that he has not stated a claim upon which relief can be granted. In Peoples II, we similarly hold that, as to Mr. Peoples’s Fifth Amendment due process claim regarding alleged injury stemming from the monitoring of his phone calls, Mr. Peoples has a state-law remedy and therefore he has not stated a claim upon which relief may be granted. Last, we agree with the District Court in Peoples II that Mr. Peoples’s remaining claims fail to allege facts sufficient to state a claim under the Fifth Amendment and therefore affirm the District Court’s dismissal of those claims. We AFFIRM.

. Because Mr. Peoples was a pretrial detainee at the time of the alleged incidents, his claims technically are for violation of his substantive due process rights. See Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir.1999). “In determining whether [a pretrial detainee’s] rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases....” Id. Thus, we refer to Mr. Peoples's claim as an Eighth Amendment claim for ease of use.

. After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of Peoples II. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). Peoples II is therefore ordered submitted without oral argument.

. We also note that jurisdiction is not defeated if the complaint could have stated a cause of action for violation of a state law. See Bell, 327 U.S. at 680, 66 S.Ct. 773. Nor is jurisdiction defeated "by the possibilily that the averments might fail to state a cause of action on which [Mr. Peoples] could actually recover.” See id. at 682, 66 S.Ct. 773 ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not a dismissal for want of jurisdiction.”).

. Importantly, however, the Court did not address whether a Bivens claim could be brought against the individual guard.

. Although the District Court ultimately dismissed for '‘lack[][of] subject matter jurisdiction," see Peoples I, 2004 WL 74317 at *7, dismissal was based on the faulty premise that jurisdiction only exists if the plaintiff can state a cause of action pursuant to Bivens. An indispensable portion of the District Court’s analysis, therefore, was whether Mal-esko bars the extension of Bivens to this case. Ultimately, we agree with this portion of the District Court's analysis.

. The FTCA states that the United States shall be liable for enumerated acts of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place [i.e., the state] where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added).

. “While not binding on this court, decisions by a state's intermediate appellate courts provide evidence of how the state's highest court would rule on the issue, and we can consider them as such.” Craven v. Univ. of Colo. Hosp. Auth., 260 F.3d 1218, 1231 (10th Cir.2001) (quotations omitted). As we find no indicia that the Kansas Supreme Court would apply a different rule, see Hesler v. Osawatomie State Hosp., 266 Kan. 616, 971 P.2d 1169, 1174 (1999) (applying Washington in the context of involuntarily committed psychiatric patients), we follow the Kansas Court of Appeals.

. Several other states in the Tenth Circuit appear to impose a similar duty. See Methola v. Eddy County, 95 N.M. 329, 622 P.2d 234 (1980); People ex rel. Coover v. Guthner, 105 Colo. 37, 94 P.2d 699 (1939); Taylor v. Slaughter, 171 Okla. 152, 42 P.2d 235 (1935). Utah, as a matter of sovereign immunity, requires willful and malicious conduct before a prison official may be found liable to an inmate for injuries caused by a third party. Sheffield v. Turner, 21 Utah 2d 314, 445 P.2d 367 (1968). Wyoming has yet to address the issue.

.We recognize that the Supreme Court, in dicta, suggested that the government contractor defense might apply to a state-law tort claim against a privately-operated federal prison when "the government has directed the contractor to do the very thing that is the subject of the claim.” Malesko, 534 U.S. at 74 n. 6, 122 S.Ct. 515. The record here, however, provides no basis for such a defense.

. Under Kansas law, punitive damages generally are limited to the "annual gross income earned by the defendant." Kan. Stat. Ann. § 60-3702(e)(l). In addition, Kansas law also limits the amount of recovery for pain and suffering in personal injury actions to $250,000. Id. § 60-19a01(b). We need not consider the effect of this provision, however, because Mr. Peoples does not seek damages for pain and suffering.

. We note that a Bivens claim will also not be implied unless the defendants acted "under color of federal law or authority." See Dry v. United States, 235 F.3d 1249, 1255 (10th Cir.2000). We do not reach that issue in Peoples I, however, because we conclude that dismissal is warranted due to the existence of a state law cause of action. See Ross v. United States Marshal, 168 F.3d at 1194 n. 2 (appellate court may affirm the district court's judgment on any ground supported in the record). Because we also conclude in Peoples II that Mr. Peoples’s allegations, even if true, do not constitute a constitutional violation, we similarly do not reach the issue in our discussion of that case.

. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves Bell, which is the Court's watershed case involving pretrial detainees, untouched. See, e.g., Fuentes v. Wagner, 206 F.3d 335, 342 n. 9 (3d Cir.2000); Rapier v. Hands, 172 F.3d 999, 1005 (7th Cir.1999).

. No other factors appear to prevent Mr. Peoples from filing suit under Kansas law. As we discussed above, the government contractor doctrine is not applicable because there is nothing in the record indicating that the Marshal Service specifically ordered the monitoring of Mr. Peoples's calls to his attorney.