[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11436

Non-Argument Calendar

_____

AKASH DIXIT,
For self and as next friend of his minor son AD,

Plaintiff-Appellant,

*versus*

VINCENT FAIRNOT,
Immigration and Customs Enforcement Deportation Officer,
ALICIA FERRA,
ICE SDDO at Atlanta Field Office,
OFFICER CIPRAN,
ICE SDDO at Atlanta Field Office,
OFFICER ESPERAN,
ICE resident SDDO at Irwin County Detention Center,
OFFICER KELLY,

2                    Opinion of the Court                    23-11436

Temporary ICE DO at Irwin County Detention Center,

                                                    Defendants-Appellees,

OFFICER HILL,
Temporary ICE DO at Irwin County Detention Center, et al.,

                                                                Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:19-cv-00194-WLS-TQL

_____

Before KIDD, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Akash Dixit, a citizen and resident of India proceeding *pro se*, appeals from the District Court's order granting summary judgment to Immigration and Customs Enforcement ("ICE") Officers Vincent Fairnot, Alicia Ferra, Cesar Cipran, and Robin Esperan (collectively, the "ICE Officers"). In his appeal, Dixit raises various issues related to the Court's orders (1) denying his attempt to bring claims and secure appointment of counsel on behalf of his minor son; (2) dismissing the third claim in his complaint, which alleged

cruel and unusual punishment as well as due process violations, for failure to state a cognizable claim; (3) denying his motion for recusal of the District Judge; (4) denying his motions for default judgment; and (5) denying his request for a preliminary injunction. Dixit does not contest the Court's final judgment. After careful review, we affirm.[1]

## I.

The factual background of this appeal is somewhat muddled. Akash Dixit, a citizen and resident of India, completed his doctoral studies at Georgia Institute of Technology. Dixit was then employed as university faculty—first at his alma mater and then at a university in Michigan. Along the way, he married Tanya Singh, a citizen of India, and had a child with her. When their marital relationship fell apart, Dixit returned to India to serve in the faculty of an Indian university. He returned to Georgia in 2016 with his son, whereupon Singh—allegedly a resident of India—served him in a divorce action. Ultimately, Dixit lost custody of his minor son.

In 2018, Dixit was arrested in Fulton County, Georgia, for false imprisonment arising from his attempt to see his minor son. Although the State declined to prosecute, ICE detained Dixit for overstaying his visa. Over the course of his detention, Dixit was held in various locations around the United States, including at the Irwin County Detention Center in Ocilla, Georgia.

---

[1] We also grant Dixit's "Motion to Excuse Paper Filing" to the extent that this Court suspends the requirement that he file paper copies of his reply brief.

While detained in Georgia, Dixit experienced problems with his dental fillings. Multiple fillings fell out, causing Dixit to experience acute pain and discomfort when eating food. He complained to medical staff multiple times of his need for new fillings and received oral numbing medication. But Dixit refused a dental referral for tooth extraction. Dixit continued to submit grievances until a dentist evaluated him and explained that new fillings would not resolve his issues because he required root canals, post/core build ups, and full coverage crowns. None of those were approved services for ICE. And Dixit refused to have his tooth extracted, which was a covered service. Nevertheless, Dixit continued to submit medical grievances requesting fillings.

Dixit claims that this failure to replace his fillings ultimately resulted in the loss of one of his teeth and the need for two root canal procedures. Other teeth developed cavities due to putrefaction of his affected teeth. And his gums suffered deep wounds.

While detained in the Adams County Detention Center in Washington, Mississippi, Dixit filed a complaint *pro se* and *in forma pauperis* against the ICE Officers in their personal capacities.[2] He

---

[2] Dixit also named three additional ICE defendants in his initial complaint. The Court dismissed two of those defendants, and Dixit failed to include the third in his operative complaint.

Dixit also originally sought to bring his complaint on his behalf and on behalf of his minor son. The Magistrate Judge barred Dixit from representing his son because Dixit was proceeding *pro se*. Dixit objected, claiming the Magistrate Judge's order violated his son's due process and equal protection rights, and that it subjected his son to cruel and unusual punishment akin to the status of

23-11436                 Opinion of the Court                      5

styled his complaint as a *Bivens*[3] action.  As of the filing of his amended complaint, Dixit's removal proceedings had concluded and he had been deported to India.

The operative complaint raised five claims:

- In Count I, Dixit claimed the defendants subjected him to cruel and unusual punishment and violated his due process rights by improperly classifying him as a high security prisoner and subjecting him to poor conditions in the high security dorms.

- In Count II, Dixit claimed the defendants subjected him to cruel and unusual punishment by denying him proper dental care.[4]

- In Count III, Dixit claimed that the defendants subjected him to cruel and unusual punishment and denied him due process by conspiring with his ex-wife and her lawyer to

---

slavery.  Moreover, Dixit alleged that refusing to allow this representation violated his and his son's First Amendment right to free practice of their religion, Hinduism.  The District Court construed Dixit's objection as a motion to reconsider, which it denied.

[3] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

[4] Dixit in his amended complaint sought to add as defendants to this claim Senior Judge Hugh Lawson and Magistrate Judge Stephen Hyles, who presided over the habeas corpus petition that Dixit filed while in custody.  Dixit asserted that Judge Lawson and Judge Hyles allowed his habeas case to linger on the docket, thereby contributing to his suffering.

obstruct his applications for humanitarian parole and prose-cutorial discretion, thereby fraudulently maintaining his incarceration, and by perpetuating a fraud on the immigration system.

- In Count IV, Dixit claimed the defendants—in conspiracy with his ex-wife and other private parties—subjected him to cruel and unusual punishment and denied him due process by denying him access to the courts and holding him in custody after the Board of Immigration Appeals granted him voluntary departure, forcing him to suffer onerous conditions when ICE moved him between facilities and transported him to India.[5]

- In Count V, Dixit claimed the defendants subjected him to cruel and unusual punishment and denied him due process by failing to act in a timely manner on his habeas petition and by conspiring to divert taxpayer money to private prisons.[6]

The Court adopted the Magistrate Judge's recommendation that all counts other than Count II be dismissed without prejudice

---

[5] Dixit in his amended complaint added Sailesh Lakatia, the Indian Consul of the Consulate of the Republic of India in Atlanta, Georgia, as a defendant to this claim.

[6] Dixit in his amended complaint again sought to add Judge Lawson and Judge Hyles as defendants to this claim.

for failure to state a claim, and that Count II only be permitted to proceed as to the ICE Officers.[7]

Dixit then moved for entry of a default judgment as to the ICE Officers. He also moved for a preliminary injunction against neighbors and homeless individuals trespassing on or interfering with his Atlanta property. Because it was not clear that all required parties had been properly served and because service was forthgoing, the Court adopted the Magistrate Judge's recommendation that Dixit's motion for a default judgment be denied.[8] The Court similarly adopted the Magistrate Judge's recommendation that Dixit's request for injunctive relief be denied because Dixit sought to enjoin persons not made parties to the case and because Dixit could not meet the standards required for injunctive relief.

Eventually, the ICE Officers moved for summary judgment on Dixit's remaining claim. Dixit cross-moved for partial summary judgment.

But before the Court could rule on these motions, Dixit moved for the recusal of Senior District Judge W. Louis Sands under 28 U.S.C. §§ 144 and 455. He alleged Judge Sands improperly relied on items outside the record to rule against him, engaged in ex parte communications with a non-litigant regarding his ex-wife,

---

[7] The District Court adopted the Magistrate Judge's recommendation that Dixit's claims against Judge Lawson and Judge Hyles be dismissed on grounds of absolute judicial immunity.

[8] When Dixit later moved for "reinstatement" of this motion, the Court denied it again.

improperly prevented appeals by removing his ability to e-file documents, failed to engage in substantive review of the Magistrate Judge's recommendations, and generally treated him in a biased manner. Judge Sands comprehensively addressed Dixit's assertions and denied his motion.

As to the cross-motions for summary judgment, the Court adopted the Magistrate Judge's recommendation that summary judgment be granted for the ICE Officers.

Dixit timely appeals.

⋆          ⋆          ⋆

Dixit appears to raise five issues in his appellate brief.[9]  First, he asserts the Court erred by denying both his attempt to bring claims on his minor son's behalf and his request to appoint counsel for his son.  Second, he argues that the Court erred in dismissing Count III for failure to state a claim.  Third, he contests the denial of his motion for the recusal of Judge Sands.  Fourth, he appeals the denials of his motion for entry of a default judgment and his motion to "reinstate" that motion.  Fifth, he alleges error in the denial of his request for a preliminary injunction.  We address each claim in turn.

---

[9] "[W]e read briefs filed by pro se litigants liberally . . . ." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (citing *Lorisme v. I.N.S.*, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997)).

## II.

We begin with Dixit's claim that the Court erred by denying both his attempt to bring claims on his minor son's behalf and his request to appoint counsel for his son.

Because Dixit initiated his action *in forma pauperis*, the Court conducted a preliminary review of his complaint under 28 U.S.C. § 1915(e)(2)(B). The Magistrate Judge ordered that Dixit could not assert claims on his son's behalf because he was proceeding *pro se*. Dixit objected to this determination and sought leave to amend his complaint to include such claims, but the District Court, construing the objections as a motion to reconsider the Magistrate Judge's decision under 28 U.S.C. § 636(b)(1)(A), denied his request. And the Court denied appointment of counsel because there were no existing claims for his son and the Court could not find any claims that should proceed in the case. On appeal, Dixit contends that these rulings were erroneous.

We review for an abuse of discretion a district court's order denying reconsideration of a magistrate judge's ruling on a non-dispositive pretrial matter.[10] *See Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1326–27 (11th Cir. 2020). We also review for

---

[10] The District Court reviewed the Magistrate Judge's order as an order on a non-dispositive matter subject to the clear-error or contrary-to-law standard of review. Dixit did not contest whether the matter was dispositive or non-dispositive, and he does not raise this issue on appeal. We therefore apply the appellate standard of review corresponding to a ruling on a non-dispositive matter.

an abuse of discretion a denial of a motion for appointment of counsel. *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) (citing *Steele v. Shah*, 87 F.3d 1266, 1270–71 (11th Cir. 1996)). We will leave the rulings undisturbed unless the District Court made an error of law or committed a clear error of judgment. *See Jordan*, 947 F.3d at 1328 (citation omitted).

The District Court did not abuse its discretion by denying Dixit's motion for reconsideration. The District Court followed our statement in *Devine v. Indian River County School Board*, 121 F.3d 576 (11th Cir. 1997), that Federal Rule of Civil Procedure 17(c) does not authorize a non-lawyer parent to represent their children *pro se*. 121 F.3d at 581, *overruled in part on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 127 S. Ct. 1994 (2007). Black-letter law precluded Dixit from both litigating his case *pro se* and raising constitutional claims on his minor son's behalf. The District Court did not commit an error of law or clear error of judgment by applying binding precedent.

Similarly, the Court did not abuse its discretion by refusing to appoint counsel for Dixit's minor son. For one, the Court reasonably determined that Dixit's complaint did not clearly state what claims were asserted on his minor son's behalf. The complaint related constitutional violations allegedly inflicted upon Dixit—not his son—by parties involved with his detention and deportation. While references to Dixit's son do appear, they almost always relate to Dixit's own purported injuries. The only times Dixit clearly references his son as a party to the action are when he

requests compensatory damages.  Moreover, all counts other than Count II were dismissed, and Count II—a claim relating to Dixit's medical treatment while detained—does not involve Dixit's son. The constitutional arguments Dixit made on his son's behalf were too vague and unsubstantiated to clarify his intentions.  Parties in civil cases generally do not have a right to appointed counsel, and it was within the "broad discretion" of the Court to determine that no "exceptional circumstances" required appointment of counsel here.  *See Bass*, 170 F.3d at 1320.

Given these circumstances and the breadth of the Court's discretion in deciding whether to appoint counsel, we cannot say the Court abused its discretion.

## III.

Dixit next argues that the Court erred in dismissing Count III for failure to state a claim.  The gravamen of his argument is that the District Court misunderstood and erroneously analyzed the factual allegations in his complaint.

We review *de novo* a district court's dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), using the same standards that govern dismissals under Federal Rule of Civil Procedure 12(b)(6), *see Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), and "viewing the allegations in the complaint as true," *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (citation omitted).

Dixit has not sufficiently stated a claim in Count III of his amended complaint.  Dixit styles his claim as a *Bivens* claim, either on the basis of cruel and unusual punishment or for violation of his

due process rights.  The thrust of his factual allegations is that the ICE Officers obstructed his attempts to gain humanitarian parole, thereby perpetuating his detention, and punished him by relocating him to segregated housing.  But we have previously held "that a plaintiff cannot recover damages under *Bivens* for constitutional violations that caused him to endure a prolonged immigration detention."  *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1208 (11th Cir. 2016) (footnote omitted).  Further, the protections of the Eighth Amendment do not attach until after a person has been convicted and sentenced.  *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985).  To the extent that Dixit attempts to tie the ICE Officers' conduct to the Eighth Amendment's prohibition against cruel and unusual punishment, his claim fails because he was a detainee rather than a convicted inmate.

Even if Dixit could raise a *Bivens* claim under the Fifth Amendment's Due Process Clause, his argument still fails.  Certainly, "a detainee may not be punished prior to an adjudication of guilt . . . ."  *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979) (footnote and citations omitted).  But Dixit does not sufficiently allege facts supporting a claim that the ICE Officers unconstitutionally punished him.  Rather, he mainly alleges that the ICE Officers returned his Detainee Request Worksheets ("DRWs")—which served as a method for detainees to make requests and complaints to the detention facility or ICE staff—with "evasive" responses or denials.  That Dixit did not receive ideal responses to his requests does not constitute punishment.

Nor does Dixit's relocation to segregated housing constitute punishment in violation of the Fifth Amendment. That relocation arose from the hostile actions of fellow detainees, which—absent allegations of punitive motivation or that the choice of segregated housing was arbitrary in relation to available housing—undermines any claim that the move constituted punishment. *See id.* at 561, 99 S. Ct. at 1185–86 (explaining that whether detention practices "constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose"); *accord Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106–07 (10th Cir. 2005) (placing a pretrial detainee in segregation for lack of bed space is not punishment), *aff'g Peoples v. Corr. Corp. of Am.*, No. CIV.A.02-3298-CM, 2004 WL 2278667 (D. Kan. Mar. 26, 2004), *aff'd in part by an equally divided en banc court*, 449 F.3d 1097 (2006); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (segregating a detainee for managerial reasons does not implicate due process rights).

Moreover, "the failure to receive relief that is purely discretionary in nature," such as humanitarian parole, "does not amount to a deprivation of a liberty interest." *See Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S. Ct. 2460, 2464–65 (1981)).

To the extent Dixit asserts that the purported *disruptions* of his attempts to obtain discretionary relief constitute an injury, he does not sufficiently allege facts supporting such a claim. Dixit does

not deny that he received replies to his DRWs requesting discretionary relief, but rather complains that they were unideal replies unsubstantiated by reasoning that Dixit felt was sufficient. He does not allege facts showing that his requests were not duly considered and rejected by parties with proper authority. To the extent that he did not receive responses from superior authorities in ICE or the Department of Homeland Security, Dixit does not allege how the ICE Officers were responsible for those deficiencies. And it was not an interference with his due process rights for his requests to be denied on the basis of information in his file which he vigorously contests, such as using threatening language in legal filings, abusing his ex-wife, or abusing his child. Indeed, even after he was reprimanded for allegedly threatening the judges of our Court in legal filings, he was not barred from submitting DRWs. His most concrete assertion that Officers Hill and Cipran threatened him to stop sending DRWs is immediately contradicted by his allegation that he continued submitting DRWs through Officers Hill and Cipran, to which he did actually receive a response. Absent any constitutional violations, his allegations of conspiracy between the ICE Officers and his ex-wife and her attorney—which are general and based on speculative inferences—are unfounded.

Finally, as the Magistrate Judge adequately explained, Dixit's vague allegations of the ICE Officers overlooking immigration fraud do not suggest that his rights were violated in any way— much less in a way cognizable through a *Bivens* claim predicated on the Eighth and Fifth Amendments.

Consequently, we agree with the District Court that Dixit failed to state a claim in Count III.

## IV.

Dixit next asserts that the District Court erred in denying his motion for recusal.  However, Dixit does not explain why the Court erred in denying his motion.  He merely states in a conclusory manner that the Court erred and that he appeals on the basis of that error.  That is not enough to adequately present his claim for review.  *See Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  Dixit has therefore abandoned this claim.

## V.

Dixit also appeals the Court's denials of his motions for entry of a default judgment against the ICE Officers.[11]  Liberally

---

[11] Dixit filed a motion for entry of a default judgment against the ICE Officers and then amended it.  The Court adopted the Magistrate Judge's recommendations and denied Dixit's motion without prejudice.  Then Dixit filed a motion asking for "reinstatement" of his first motion.  The Magistrate Judge denied Dixit's motion without explaining how he would review a motion for "reinstatement."  The District Judge also overruled Dixit's objections to that denial without explaining how he construed a motion for "reinstatement."

Both the Magistrate Judge and the District Judge appear to have treated Dixit's motion for "reinstatement" as a renewed motion for entry of a default judgment.  And Dixit refers to it as a "renewed motion for default" in his appellate

construing Dixit's appellate brief, he appears to argue that the Court erred by improperly indulging the ICE Officers' delays rather than entering a default judgment.

"We review the denial of a motion for a default judgment for abuse of discretion." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (citing *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014) (internal quotation marks omitted).

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). But lack of service generally deprives the Court of its power to render a judgment. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). And if "a United States officer or employee [is] sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf . . . a party must serve the United States and also serve the officer or employee . . . ." Fed. R. Civ. P. 4(i)(3). It is only after the officer or employee *and* the United

---

brief. We therefore treat it as a successive motion for entry of a default judgment.

23-11436                Opinion of the Court                17

States Attorney are served that an answer to a complaint is required. *See* Fed. R. Civ. P. 12(a)(3).

The Court did not abuse its discretion in denying Dixit's first motion because Dixit had not properly served the defendants. In response to the Magistrate Judge's order to show cause as to why default should not be entered against four of the ICE Officers, the United States through the Acting United States Attorney for the Middle District of Georgia notified the Court that the United States had not been served pursuant to Rule 4(i). Accordingly, it would have been improper at that point, when it was not clear that the defendants had been properly served, to enter a default against the ICE Officers.

Nor did the Court abuse its discretion in denying Dixit's renewed motion. The ICE Officers notified the Court that service on the United States was perfected after the Court directed the clerk to serve the United States. The defendants then had 60 days from service to file an answer. *See* Fed. R. Civ. P. 12(a)(2). But Dixit renewed his motion before that deadline elapsed. Nothing had factually or legally changed in the interim from his first motion to justify entry of a default judgment.

The Court therefore did not abuse its discretion in denying Dixit's motions for entry of a default judgment.

## VI.

Finally, Dixit claims error in the denial of his request for a preliminary injunction. Even liberally construing his brief on appeal, however, we cannot entertain this claim.

First, Dixit's appellate brief appears to target this Court's dismissal of his interlocutory appeal of the denial of his motion for a preliminary injunction. *See Dixit v. Fairnot*, No. 22-10823-F, 2022 WL 19001331, at *1 (11th Cir. Dec. 1, 2022). He continually refers to "the denial of [his] motion for interlocutory injunctions" and quotes the arguments made when he and the ICE Officers briefed the jurisdictional question this Court issued. He then refers to the Magistrate Judge's statements about his right to an interlocutory appeal of the denial. And he ends this section of his brief by referring vaguely to the District and Magistrate Judges' determinations about the timeliness for an "appeal from [the] interlocutory order . . . ." To the extent that Dixit is challenging the interlocutory proceedings, we are without jurisdiction to address the order of a prior panel of this Court dismissing his interlocutory appeal.

Even if we assume Dixit intended to challenge the denial of his motion for a preliminary injunction—which he may have mistakenly referred to as an interlocutory injunction—his irrelevant and specious arguments force us to conclude that he has abandoned the issue. Nowhere in his brief does Dixit challenge the legal bases for the denial of his motion. Rather, he appears to not understand that the Court could not exercise jurisdiction over parties totally disconnected from his action—neighbors and unidentified interlopers near his property in Atlanta. Instead, he believes that the Court based its denial on its dismissal of all claims in his complaint except Count II. But the Magistrate Judge explained the jurisdictional basis for its determination *and* why it could not grant his request under the standards for granting injunctive relief. The

District Judge repeated these explanations.  And so did the prior panel of this Court.  *See id.*  Yet not once in his appellate brief does Dixit engage with any of this reasoning.  Absent any relevant, sensical arguments contesting the denial of his motion for a preliminary injunction—much less arguments addressing each basis for the denial—Dixit has abandoned this claim.  *See Sapuppo*, 739 F.3d at 681.

## VII.

For the foregoing reasons, we affirm.

**AFFIRMED.**